In re Interest of Jahon S., a child
under 18 years of age.
State of Nebraska, appellee, v.
Reon W., appellant.

___ N.W.2d ___

Filed June 12, 2015.    No. S-14-1049.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Parental Rights: Proof.** Under Neb. Rev. Stat. § 43-292 (Cum. Supp. 2014), in order to terminate parental rights, the State must prove, by clear and convincing evidence, that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests.
3. ____: ____. In addition to proving a statutory ground, the State must show that termination is in the best interests of the child.
4. **Constitutional Law: Parental Rights: Proof.** A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit.
5. **Parental Rights: Presumptions: Proof.** There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit.
6. **Parental Rights: Statutes: Words and Phrases.** The term "unfitness" is not expressly used in Neb. Rev. Stat. § 43-292 (Cum. Supp. 2014), but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests.
7. **Constitutional Law: Parental Rights: Words and Phrases.** In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a

reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being.

8. **Parental Rights.** The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts as the other.

9. ____. Although incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered.

10. **Parental Rights: Abandonment.** Although incarceration itself may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary.

11. ____: ____. In a case involving termination of parental rights, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration.

12. **Parental Rights.** Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity.

Appeal from the Separate Juvenile Court of Douglas County: Christopher Kelly, Judge. Affirmed.

Joseph L. Howard, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellant.

Donald W. Kleine, Douglas County Attorney, Amy Schuchman, and Jennifer Chrystal-Clark for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

Reon W. and P'lar'e S. are the parents of Zanaya W., Mileaya S., Imareon S., and Jahon S. The separate juvenile court of Douglas County terminated P'lare's parental rights to all four children and Reon's parental rights to Zanaya, Mileaya, and Imareon. Both parents filed timely appeals. We affirmed the terminations in *In re Interest of Zanaya W. et al.*[1] In a separate proceeding, the same court terminated Reon's parental rights to Jahon, the youngest of the four children. This is Reon's direct appeal from that order.

---

[1] *In re Interest of Zanaya W. et al., ante* p. 20, ___ N.W.2d ___ (2015).

## BACKGROUND

As noted in our opinion in *In re Interest of Zanaya W. et al.*, the three older children were adjudicated as children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) and placed with their father, Reon, after they were removed from the custody of their mother, P'lar'e. But in March 2013, the children were removed from Reon's custody when the Department of Health and Human Services (DHHS) learned that Reon was incarcerated on pending criminal charges. On July 9, Reon pled guilty to a charge of possession of marijuana with intent to deliver, a Class IIIA felony. On September 10, he was sentenced to imprisonment for 3 to 5 years.

Jahon was born in November 2013, while Reon was serving his prison sentence. Two days after his birth, an ex parte order for emergency temporary custody was entered and he was placed in the custody of DHHS. When he was 4 days old, Jahon was placed with the same foster parents who care for his three older siblings, and he remained in that placement with his siblings at the time of the termination hearing.

In September 2014, the State filed a supplemental petition to terminate Reon's rights to Jahon. As grounds, it asserted he had substantially and continuously or repeatedly neglected and refused to give necessary parental care and protection to Jahon and his three older siblings. Reon personally appeared in the juvenile court with counsel on October 28 and entered a denial to the supplemental petition. A termination hearing was held immediately thereafter. Although Reon was present with counsel, he did not testify or offer any evidence.

The State called two witnesses. The first was the foster parent with whom Jahon and his siblings had been placed. She testified that Jahon was placed with her in December 2013 and that his three siblings had been placed with her since April 2013. All four children were in her care at the time of the hearing. She testified that while the children were in her care, Reon had sent several letters to each of them, including Jahon, but had not visited with them in person or by telephone. She

testified that Reon had been incarcerated during the entire time that Jahon had been placed with her.

The second State witness was Janece Potter. She testified that she had served as the family permanency specialist for Jahon and his three siblings and had worked with them and their parents from August 2012 through March 2014, when she took a different position. Potter testified that after they became state wards and were removed from the custody of their mother, Zanaya and Mileaya were placed with Reon in March 2011 and that Imareon was placed with Reon in August 2012. Potter testified that while the children were placed with Reon, she checked on them one or two times each month and had no concerns about their well-being other than an observation that the house was "cluttered." But in 2013, Potter learned that Reon had been incarcerated in 2012 and that during his incarceration, the children were cared for by Reon's mother. Reon had not reported this incarceration to Potter; she learned of it from another source. On March 29, 2013, Reon was arrested for possession of marijuana with intent to deliver and the three children were removed and placed in foster care. While incarcerated for this offense, Reon was charged with physically assaulting another inmate.

Potter visited with Reon at the correctional facility where he was incarcerated in April 2013. They discussed the fact that drugs had been found in his home, and he reported that he had been smoking an ounce of marijuana a day but denied selling it. Potter stated that Reon was unable to participate in review hearings or receive services during his incarceration.

In January 2014, Potter assumed case management responsibilities for Jahon. She prepared a court report and case plan for a review hearing held in March. The report noted that Jahon's needs for safety, health, and well-being were being met in his foster home and that DHHS was working on an alternative permanency plan of adoption. The report noted that no services had been ordered for Reon, who was still incarcerated. Potter stated that she had been unable to meet with Reon since September 2013 because he had been placed

in isolation. At some point, she learned this was because he had been charged with the assault of another inmate. In March 2014, Potter recommended that a motion to terminate parental rights be filed with respect to all of the children, including Jahon, because of the length of time that the cases had been open and the lack of progress that Reon had made with Jahon and his older siblings.

Potter testified that in her conversations with Reon, he never accepted responsibility for his actions or for how they affected his children. Reon told Potter that he had been employed at the correctional facility but that he either had quit or was fired. He also told her that when released, he planned to move to Florida, where his mother lived. When she asked him if he would be cooperative with DHHS upon his release, he replied that he would participate in services but would not cooperate and "would make it very difficult." Potter testified that she had determined Reon's projected release date to be in September 2015.

Potter testified that in her opinion, termination of Reon's parental rights was in the best interests of Jahon. She based her opinion on the fact that Jahon had been in foster care for "100 percent of his life" and was in need of care, which Reon could not provide due to his incarceration. She stated that Reon had not been able to make any progress toward reunification with Jahon "[d]ue to being incarcerated" and would not make any such progress during the additional year that she believed his incarceration would continue. She further stated that Jahon would be at risk of harm if returned to Reon and that Reon was not in a position to care for a child because of his incarceration. She also noted that Jahon's siblings had been in foster care for a significant amount of time.

On cross-examination, Potter acknowledged that she had assisted Reon in gaining custody of the three older children before his arrest. As late as February 2013, she believed that placement of the children with Reon was appropriate, and she wrote in a court report that Reon was able to meet the needs of his children by utilizing informal supports and community

resources while seeking full-time employment. At that time, she recommended that the permanency objective for the children should be family preservation with Reon. Potter further acknowledged that at that point, Reon had been voluntarily participating in services from the juvenile court, and she supported placing the children in his custody. In a case plan for the three older children which was in effect from July 30 until December 29, 2013, during the time that Reon was incarcerated, Potter listed "[s]trategies" which included Reon's obtaining certain evaluations and programming while "in jail" and participating "in supervised visitation when he is released from jail." She was asked how Reon could be expected to work toward reunification or provide support when no services were being provided to him, and she responded, "I'm not sure. There's not a lot you can do when you're in jail."

On redirect examination, Potter testified that she supported Reon's reunification with his three older children only while she remained unaware of his daily marijuana use and the criminal charges which resulted in his conviction and incarceration. She stated that after learning that information, she no longer thought that Reon could provide proper parental care and support.

In an order entered on October 29, 2014, the separate juvenile court terminated Reon's parental rights to Jahon. It found that the ground for termination specified in Neb. Rev. Stat. § 43-292(2) (Cum. Supp. 2014) had been met and that it was in the best interests and welfare of Jahon that Reon's parental rights be terminated. The court did not state its reasoning with respect to the best interests finding.

On November 12, 2014, Reon's counsel filed a motion to reconsider, in which he noted that at the termination hearing, there was evidence that Reon was incarcerated "and was not going to be paroled for another year." The motion recited that Reon's incarceration "was a material factor . . . in the Court's decision to terminate his parental rights" and urged reconsideration, because "[o]n November 2, 2014, Reon . . . was paroled and is no longer incarcerated." At a hearing held

on November 18, Reon's counsel advised the court that Reon had been paroled, was living in a "halfway home," and was employed. No evidence was received. The juvenile court overruled the motion, explaining that its decision was not based solely on Reon's projected release date of September 24, 2015. Reon perfected this timely appeal.

## ASSIGNMENTS OF ERROR

Reon assigns that the juvenile court erred in (1) finding his parental rights should be terminated pursuant to § 43-292(2) and (2) finding termination was in Jahon's best interests. He does not assign error with respect to the juvenile court's ruling on his motion to reconsider.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[2]

## ANALYSIS

[2] Under § 43-292, in order to terminate parental rights, the State must prove, by clear and convincing evidence, that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests.[3] Reon first argues that the State failed to prove the existence of a statutory ground for termination of his parental rights to Jahon. As noted, the State sought termination under § 43-292(2), which authorizes termination when the parent has substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection. Because we affirmed the juvenile court's decision in case No. S-14-550 terminating Reon's parental rights to Zanaya, Mileaya, and Imareon on

---

[2] *In re Interest of Nedhal A.*, 289 Neb. 711, 856 N.W.2d 565 (2014); *In re Interest of Samantha C.*, 287 Neb. 644, 843 N.W.2d 665 (2014).

[3] *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014); *In re Interest of Angelica L. & Daniel L.*, 277 Neb. 984, 767 N.W.2d 74 (2009).

this same ground, which Reon did not contest in that case, the juvenile court in this case correctly determined that the same statutory ground for termination existed as to Jahon.[4]

[3-8] Reon also challenges the finding that termination of his parental rights was in Jahon's best interests. In addition to proving a statutory ground, the State must show that termination is in the best interests of the child.[5] A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit.[6] There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit.[7] The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests.[8] In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being.[9]

---

[4] See, *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010); *In re Interest of Hope L. et al.*, 278 Neb. 869, 775 N.W.2d 384 (2009).

[5] See *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

[6] *Id.*; *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012).

[7] *Id.* See, also, *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).

[8] *In re Interest of Kendra M. et al., supra* note 5; *In re Interest of Hope L. et al., supra* note 4.

[9] See, *In re Interest of Nicole M., supra* note 3; *In re Interest of Kendra M. et al., supra* note 5; *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992).

The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts as the other.[10]

In this case, there is evidence of Reon's lack of parental fitness in that he chose to use and sell marijuana during a time when he was the sole custodial parent of Jahon's three older siblings, thereby placing the children at risk of harm. As a result of this conduct, he was incarcerated at the time of Jahon's birth and for the first year of his life, making it impossible for him to be present in Jahon's life or provide him with care and support. There is evidence that Reon was incarcerated in December 2012, also at a time when he was the sole custodial parent of Jahon's three older siblings. Further, there is evidence that Reon was charged with assaulting another inmate during his 2013 incarceration.

[9-11] Although incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered.[11] And we have noted that although incarceration itself may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary.[12] Thus, in a case involving termination of parental rights, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration.[13]

In *In re Interest of DeWayne G. & Devon G.*,[14] we concluded that termination of an incarcerated father's rights was in the best interests of his two sons when he had never cared for them prior to his incarceration and when one son had been in foster care for more than 4 years and the other for 2 years.

---

[10] *In re Interest of Nicole M., supra* note 3; *In re Interest of Kendra M. et al., supra* note 5.

[11] *In re Interest of Ryder J., supra* note 6; *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002).

[12] *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999).

[13] *In re Interest of DeWayne G. & Devon G., supra* note 11.

[14] *Id.*

We reached this conclusion despite the father's testimony that he was scheduled for parole approximately 3 months after the termination hearing.

Although it appears from the record that Reon may have been paroled within a month following the termination hearing, there is no basis for concluding that he is prepared to be a parent to Jahon. His past criminal actions demonstrate voluntary conduct that prevented him from functioning as a fit parent. The only evidence as to his future ability to parent is that he does not intend to cooperate with DHHS and "would make it very difficult" for that agency to reunify him with his children. Further, there is evidence that Reon refuses to accept responsibility for his criminal actions and how they affected his children.

[12] Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity.[15] As a result of decisions made by Reon which adversely reflect upon his parental fitness, Jahon has been in foster care for his entire life, and there is no basis on this record to conclude that permanency could be achieved in the foreseeable future if Reon's parental rights remain intact. We therefore conclude that the separate juvenile court did not err in finding that termination of Reon's parental rights was in Jahon's best interests.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the separate juvenile court terminating Reon's parental rights to Jahon.

AFFIRMED.

---

[15] *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008).