IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF JAINA W. ET AL.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF JAINA W., TRYSTAN W., SEBASTYEN R., SELENA R., AND EVELYNN R.,

CHILDREN UNDER 18 YEARS OF AGE.


STATE OF NEBRASKA, APPELLEE,

V.

DENESIA W., APPELLANT.


Filed September 20, 2016.    Nos. A-16-177 through A-16-181.


Appeal from the County Court for Kearney County: MICHAEL P. BURNS, Judge. Affirmed.

Jeffrey P. Ensz, of Lieske, Lieske & Ensz, P.C., L.L.O., for appellant.

No appearance for appellee.

Natalie G. Nelsen, of Dier, Osborn, Cox & Nelsen, P.C., L.L.O., guardian ad litem.


MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

PIRTLE, Judge.

### INTRODUCTION

Denesia W. appeals the order of the county court for Kearney County which terminated her parental rights to five minor children. Denesia asserts the court's decision is contrary to the law and the evidence. For the reasons that follow, we affirm.

BACKGROUND

Denesia is the biological mother of Jaina W., Trystan W., Sebastyen R., Selena R., and Evelynn R. The minor children were removed from Denesia's care on December 31, 2013, following a report to law enforcement and the Department of Health and Human Services (DHHS) that the children had been left for an extended period of time with caregivers who had little or no contact with Denesia. The children have remained in the care and custody of DHHS and in an out-of-home placement since their removal.

A petition was filed on December 31, 2013 alleging that the children were abandoned by their parents; they lacked proper parental care by reason of the faults or habits of their parents; and that their parents neglected or refused to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of the children.

In February 2014, Denesia was arrested and ultimately pled guilty to an amended charge of attempted possession of methamphetamine. She was sentenced to 180 days in the Buffalo County Jail. Her sentence was to begin July 16, 2014. She was also ordered to serve a period of 30 months' probation. In March she was arrested again and was found guilty of the charge of operating a motor vehicle to avoid arrest. She was sentenced to 90 days in jail, beginning in July 2014.

Following an adjudication hearing on March 17, 2014, the children were found to be within the meaning of Neb. Rev. Stat. § 43-247(3)(a). DHHS provided services to the family including visitation, drug screen testing, family support, and a chemical dependency evaluation.

Denesia was furloughed from jail to complete inpatient residential treatment at St. Francis Drug and Alcohol Treatment Center. She successfully completed treatment on June 10, 2014, and enrolled in The Bridge halfway house in Hastings. Denesia completed a chemical dependency evaluation and a psychological evaluation. Five supervised visits occurred during Denesia's time in residential treatment and while enrolled at The Bridge. The visitation reports indicated that Denesia was receptive to feedback given by the supervising staff, and that she displayed positive parenting skills.

Denesia left the halfway house on July 15, 2014 without successfully completing the program. Denesia was in custody at the time of a dispositional hearing, which was held on July 24. Visits were suspended due to Denesia's incarceration. Following the July 24 hearing, Denesia was ordered to comply with the terms of the DHHS case plan. The case plan states that the goal for Denesia was to "learn and demonstrate the skills needed to live a drug free lifestyle and ensure that she can meet the needs of her children." It also stated the goal to provide a safe and stable environment for her five children and to obtain and maintain appropriate housing for herself and the children.

The case plan outlined strategies for Denesia to use to achieve the stated goal. Strategies included:

> 1. Cooperation with the courts, attorneys, and service providers to resolve her current legal issues.

2. Acknowledging the negative effect that her substance abuse and certain choices she has made have had on her children, and demonstrating a clear understanding of her protective role as a parent.

3. Abstaining from use of illegal drugs or alcohol, and submitting to random drug testing with no positive results.

4. Addressing mental health needs, including attending regular counseling and support groups, and following recommendations outlined in her chemical dependency evaluation and psychological evaluation.

5. Engaging in positive and productive visitation with the children.

6. Cooperating with family support providers to develop a positive support system and utilizing appropriate community resources to assist with her needs.

7. Cooperating with family support providers to learn and demonstrate appropriate parenting skills and discipline techniques.

8. Acquiring safe and appropriate housing and working with family support to demonstrate appropriate budgeting, cleaning, and daily management.

9. Obtaining gainful employment and maintaining a reliable and appropriate source of income.

A review hearing was held on October 23, 2014, and a case plan with the same goals and strategies was adopted by the court. The plan noted that Denesia had made minimal progress. A review and permanency hearing was held on November 17, 2014, and at that time the court changed the permanency goal to adoption with a concurrent plan of reunification. Upon her release from jail, Denesia was ordered to produce negative drug tests for a period of four weeks before she would be allowed to resume therapeutic visitation with the children. Denesia did not participate in any drug testing after her release from jail and no visits occurred.

In October 2014, Denesia entered a plea of no contest to a charge of theft by unlawful taking and was sentenced to 30 months' probation in Hall County. The term of probation was to run concurrently with the sentence of probation previously ordered in Buffalo County. In December 2014, Denesia was ticketed in Dawson County for possession of "a weed pipe and one bowl of weed." The State filed a motion to revoke Denesia's probation in January 2015. In March 2015, Denesia was resentenced to a period of one year in the Buffalo County Detention Center.

On December 19, 2014, the guardian ad litem for the minor children filed petitions to terminate the parental rights of Denesia with respect to each child. A review hearing was held on May 28, 2015 and the court adopted the DHHS case plan dated May 6, 2015. The plan included the same goals and strategies, and noted Denesia had made minimal progress. The plan also noted Denesia's continued failure to cooperate with the courts, attorneys, and service providers. The plan further stated that Denesia "created several new legal issues for herself and after having six warrants out for her arrest, she was jailed on March 2, 2015."

On August 17, 2015, a trial was held on the petition to terminate Denesia's parental rights. At that time, Denesia was incarcerated and awaiting sentencing on a conviction for theft by unlawful taking, and resentencing on a probation revocation.

Denesia testified that prior to the children's removal, she was employed by Werner Construction as a certified flagger and pilot car driver. She testified that she had not used drugs at any time between her release from incarceration in October 2014 and the time of trial. Denesia testified that when she was arrested in Hall County, she had been shoplifting, and she had possession of methamphetamine at that time. She had pled guilty to the charge, and admitted that she had possessed the drug. However, she stated that she had not used the methamphetamine, it was like a "security blanket."

Denesia testified that she attended AA meetings and church services while in jail and she intended to continue attending meetings and church upon her release to help her maintain her sobriety. She said her incarceration motivated her to finish her GED, take business management classes, and go to college with the goal of opening her own business. She testified that upon her release she would be able to work for her uncle, aunt, and cousin, and her sister, Danielle, could help her watch the children. She stated that her uncle is strict, so she would not need a halfway house to help her maintain her sobriety. She testified that her uncle lives in a two bedroom trailer, and has a criminal history, including sexual assault of a minor. She acknowledged that Danielle's children had been removed from her care as part of a juvenile case. However, she still believed that the sister would be an appropriate caregiver for the children, stating "I don't see how that's relevant to my case."

Several of Denesia's friends and family testified that Denesia was a good mother. She took her children on walks, to the park or the swimming pool, and managed the children well as a single parent. Denesia's aunt testified that Denesia did not seem like herself in the weeks prior to the removal of the children from her home. Denesia's cousin testified that Denesia was "a mess" after the children were removed.

Tana Fye testified that she was the guardian ad litem in a 2012 juvenile case in which Denesia's five children were removed. The children were placed in the temporary custody of DHHS, but were returned after a few weeks. Fye testified that the primary reason for removal was that Denesia had lost her home, and that during that case, Denesia submitted to drug testing and maintained appropriate employment.

The therapists for the children testified that the children benefit from the stability of their current foster placement. Dr. John Meidlinger, a clinical psychologist, testified that he had diagnosed Denesia with adjustment disorder with anxious mood, alcohol and cannabis dependence in early remission, and personality disorder with antisocial and narcissistic features. He recommended continued treatment and expressed his belief that her prognosis was not good, as she would have significant difficulty changing the patterns of behavior which led to the difficulties she was experiencing. He recommended against returning the minor children to her custody until she had demonstrated a long period of stable functioning in her work, relationships, finances, and emotions, and demonstrated abstinence from alcohol and drugs. He stated that a "long period" of stability meant one or two years.

Kelly Cheloha, a family services specialist for DHHS testified that Denesia was provided with case management, visits, drug testing, gas vouchers, team meetings, a drug and alcohol evaluation, parenting assessments, and a psychological evaluation. She stated that Denesia had failed to alleviate the safety concerns and had not made sufficient progress in achieving the goals

set forth in the case plan. She testified that the children had been in an out-of-home placement continuously since their removal on December 31, 2013, and that she had not been in a position to recommend anything other than fully supervised visits during the pendency of this case. Upon Denesia's release from jail in October 2014, visitation with the children was conditioned upon completion of four weeks of drug testing. Despite multiple attempts to get a sample for urinalysis testing, none of the attempts were successful, and visitation was not restored. Cheloha testified that progress made while incarcerated does not necessarily translate to progress outside of jail, and did not put Denesia in a position to reunify with the children.

On January 25, 2016, the Kearney County Court terminated Denesia's parental rights with respect to the minor children. Denesia timely appeals.

## ASSIGNMENTS OF ERROR

Denesia asserts the decision of the county court was contrary to the law and evidence. Specifically, she asserts that the State failed to show clear and convincing evidence that one or more of the statutory grounds for termination existed, and that termination of her parental rights was in the children's best interests.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Gavin S.,* 23 Neb. App. 401, 873 N.W.2d (2015). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

### TERMINATION OF PARENTAL RIGHTS

On appeal, Denesia asserts the trial court erred in finding that clear and convincing evidence supports the termination of her parental rights to the minor children. Specifically, she asserts that there was insufficient evidence presented to prove the existence of one of the statutory grounds for termination under Neb. Rev. Stat. § 43-292, and that termination of her parental rights is in the children's best interests. Upon our de novo review of the record, we affirm the decision of the county court to terminate Denesia's parental rights.

For a court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests. *In re Interest of Gavin S., supra*, citing *In re Interest of Jagger L.,* 270 Neb. 828, 708 N.W.2d 802 (2006). The State must prove these factors by clear and convincing evidence. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *Id.*

### STATUTORY FACTORS

In this case, the petition for termination of Denesia's parental rights used the language of § 43-292, subsections (2), (4), and (6) to allege that there were statutory grounds for termination.

The county court found that termination of Denesia's parental rights was warranted because:

> The evidence is clear and convincing, in consideration of all findings set forth above, that: The biological father has abandoned the minor child; and the biological mother has failed to comply with the terms and conditions of the adopted case plans, due to her continuous and ongoing criminal behavior, her unwillingness to follow a structured drug/alcohol aftercare program to help her attempt to maintain sobriety and the diagnosis of her mental health conditions which reflect a poor prognosis of improvement -- all which have contributed to no progress being made toward achieving a permanency objective of reunification. It is in the minor child's best interests that parental rights of both biological parents be terminated.

Denesia correctly notes that the trial court did not specifically identify a statutory ground for termination in its order. She argues the State did not prove there was evidence of habitual drug use, or that such drug use was detrimental to the minor children. Thus, she asserts the State failed to prove by clear and convincing evidence that Denesia was unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, under § 43-292(4).

While the county court did not specifically state which subsection or subsections were proved by clear and convincing evidence, the court found that one or more of the statutory subsections had been proven, satisfying the requirements first prong of the test for termination of parental rights. Under § 43-292(6), statutory grounds for termination exist if, following a determination that the juvenile is one as described in § 43-247(3)(a), reasonable efforts to preserve and reunify the family have failed to correct the conditions leading to the determination.

The children were removed from Denesia's care on December 31, 2013 and did not return to the parental home at any time. Denesia was provided with case management, drug testing, gas vouchers, team meetings, a drug and alcohol evaluation, parenting assessments, and a psychological evaluation. She was also allowed supervised visitation with the minor children, subject to certain conditions. Despite these efforts to preserve and reunify the family, the conditions which led to adjudication have not been corrected.

Denesia was ordered to follow a case plan which included cooperating with the court, attorneys, and service providers to resolve her legal issues. The evidence shows that Denesia has committed several additional criminal violations and at the time of trial, she was awaiting sentencing for one such charge and resentencing following the violation of the terms of her probation. Denesia was ordered to provide safe and adequate housing for the children, to become gainfully employed, and to engage in positive and productive visitation. Denesia's continued incarceration has prevented her from obtaining safe and adequate housing for the children to return to and prevented her from working. Denesia testified that she would be able to live with her uncle upon her release from jail, but the record indicates his home is not a suitable residence for five minor children. Additionally, Denesia failed to complete urinalysis testing, which was a court-ordered prerequisite for visitation with the children. As a result, Denesia has not had any face-to-face interaction with the children since May 2014.

Denesia was ordered to abstain from drugs and alcohol and submit to random drug testing. Denesia completed substance abuse treatment, but voluntarily left The Bridge halfway house without successfully completing the aftercare program. She testified that she had no plans to go back to a halfway house after her release from jail. Further, after the completion of substance abuse treatment, Denesia was arrested and found to be in the possession of a controlled substance. Case reports indicated Denesia did not consistently participate in counseling and support groups designed to support her mental health needs. She has not shown a long period of stable functioning in her work, relationships, finances, or emotions.

Throughout this case, the objectives for Denesia remained consistent and she was given ample time to work toward the stated goals for reunification. After the children were determined to be children within the meaning of § 43-247(3)(a), reasonable efforts to preserve and reunify the family have failed to correct the conditions leading to the determination. Upon our de novo review, we find the State proved, by clear and convincing evidence, that grounds for termination existed under § 43-292(6).

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Justin H.,* 18 Neb. App. 718, 791 N.W.2d 765 (2010). Therefore this court need not review termination under § 43-292(2) or (4). Once a statutory basis has been proved, the next inquiry is whether termination is in the children's best interests.

BEST INTERESTS

Denesia asserts the county court erred in determining that termination of her parental rights was in the best interests of the minor children. She asserts there is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parents, and the State failed to prove that she is unfit.

The Nebraska Supreme Court has held that this presumption is overcome only when the State has proved that the parent is unfit. *In re Interest of Jahon S.,* 291 Neb. 97, 864 N.W.2d 228 (2015). In the context of the constitutionally protected relationship between a parent and a child, parental fitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's wellbeing. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries and while both are separate inquiries, each examines the same underlying facts as the other. *Id.*

In this case, there is evidence of Denesia's lack of parental fitness in that she chose to use and possess drugs, and commit a number of other criminal violations which resulted in her inability to parent her children. Further, she failed to comply with the urinalysis testing, which created a barrier to visitation after her release from jail. She successfully completed substance abuse treatment, but refused to complete aftercare or participate in the necessary counseling or support groups when she was not incarcerated.

Although incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered. The Nebraska Supreme Court has noted that although incarceration itself

may be involuntary as far as the parent is concerned, the criminal conduct causing the incarceration is voluntary. Thus, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration. *In re Interest of Jahon S., supra*. At the time of trial, Denesia was awaiting sentencing for two criminal charges and the revocation of her probation. She demonstrated voluntary conduct that prevented her from functioning as a fit parent.

Meidlinger testified that children need to be in an environment in which their needs for emotional closeness are met, where they are taught a sense of discipline and responsibility that will prepare them for independent living. They also need to be involved in social activities with peers, and need a parent who will support their education and provide for their health and well-being. He testified that in his opinion, a parent who is in and out of jail, a parent who struggles with alcohol and drug addiction, or a parent who has an untreated personality disorder cannot provide for those needs. He stated that it is in the children's best interests to have a stable environment and that it would be detrimental for the children to remain in foster care waiting for Denesia to demonstrate a sufficient period of stable functioning. Meidlinger stated that if the children were returned without a sufficient period of stability, the children would experience chaos, problems with moves, and problems with changes in relationships. Further, he opined that as a person who tends to be self-centered and self-preoccupied, Denesia would be less aware of the dangers the world presented to the children and less aware of the ways the children would need support in their educational and social development.

The children's therapists testified that the children need permanency, stability, and structure. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Jahon S., supra*. In determining the best interests of the children, the court should address whether the parent has made continued improvement in parenting skills and whether a beneficial relationship has been established between the parent and child. *In re Interest of Eden K.,* 14 Neb. App. 867, 717 N.W.2d 507 (2006). A parent's progress or lack thereof is also relevant to the issue of best interests. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable amount of time, the best interest of the child require termination of parental rights. *In re Interest of DeWayne G., Jr.,* 263 Neb. 43, 638 N.W.2d 510 (2002).

There is little evidence in the record showing Denesia has made progress in her parenting skills. Although the record shows the visits which occurred went well, few visits have actually taken place. Further, Denesia's last face-to-face visit with the children was in May 2014. Denesia failed to comply with the court-ordered urinalysis testing required to resume visitation after her release from jail in October 2014. Upon our de novo review, Denesia has demonstrated that she is unable or unwilling to rehabilitate herself, and this has impacted her ability to create or sustain a meaningful relationship with her children. We find there was clear and convincing evidence to support a finding that termination of Denesia's parental rights was in the children's best interests.

CONCLUSION

After reviewing the record de novo, we conclude that the county court did not err in finding that clear and convincing evidence supports the termination of Denesia's parental rights to the minor children under § 43-292(6), or in finding that clear and convincing evidence shows that

termination of Denesia's parental rights is in the children's best interests. For those reasons, we affirm the county court's order terminating Denesia's parental rights.

AFFIRMED.