IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF SERGIO L. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF SERGIO L. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

NICOLE H., APPELLANT, AND SERGIO L. AND JONATHAN S., APPELLEES.

Filed May 28, 2024.    Nos. A-23-708 through A-23-712.

Appeals from the County Court for Buffalo County: GERALD R. JORGENSEN, JR., Judge. Affirmed.

Tana M. Fye for appellant.

Mandi J. Amy, Deputy Buffalo County Attorney, for appellee State of Nebraska.

Nicole J. Luhm, of Jacobsen Orr, Lindstrom & Holbrook, P.C., L.L.O., guardian ad litem.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Nicole H. appeals from the order of the county court for Buffalo County, sitting as a juvenile court, which terminated her parental rights to her five children. Because we find that the State proved a statutory basis for termination, that termination was in the children's best interests, and that Nicole was unfit, we affirm the judgment of the county court.

## BACKGROUND

Nicole is the mother of five children: Sergio, born in 2008; Jovani, born in 2011; Jonathan, born in 2016; Julianna, born in 2020; and Jacob, born in 2021. The two oldest children had been

- 1 -

removed from Nicole's care in 2015 but returned to her in 2016; a second removal case began in 2019 with the three oldest children, but it was closed in January 2021. The Nebraska Department of Health and Human Services (DHHS) became involved with the family again in October, when Nicole tested positive for several controlled substances, including methamphetamine, after giving birth to Jacob. The other children also tested positive for exposure to the same illegal substances.

The children were removed from Nicole's care in October 2021. There was difficulty in finding a foster family to care for all five children, so the two youngest children went to one home, while the three oldest children went to another. At the time of the termination hearing, the three oldest children were all residing in separate foster homes, and the youngest two children remained in the same placement.

The children were adjudicated in December 2021. In March 2023, the State moved to terminate Nicole's parental rights, alleging that termination was appropriate under Neb. Rev. Stat. § 43-292(2), (4), (6), and (7) (Reissue 2016). The hearing on the motion for termination of parental rights was held on May 9, 12, and 15. Following a motion to reopen the evidence, further evidence was received on June 12. A summary of evidence relevant to the issues on appeal follows.

*Case Goals.*

Following the children's removal, Nicole was ordered to complete a drug/alcohol evaluation, attend drug counseling, participate in individual and family counseling, participate in drug testing, participate in parenting and visitation with all the children, and attain and maintain employment and appropriate housing. She was to be provided with case management, visitation, counseling, family support, and drug testing. These goals remained the same throughout the case.

In March 2022, Nicole was placed on probation for four counts of cause ingestion of methamphetamine on a child. Michelle Shultheis was assigned as Nicole's probation officer. As part of her probation, Nicole was required to complete certain classes, follow treatment recommendations, and submit to drug testing. Bryce Riessland completed a substance abuse evaluation for Nicole and recommended she complete inpatient treatment. He also provided individual counseling to Nicole in 2022. Nicole participated in a 30-day treatment program in April, which she successfully completed. Nicole testified at the termination hearing that she did not take her in-patient stay seriously and that she was just trying to do what she was supposed to do. Following her release, Nicole returned to Kearney.

During the summer of 2022, Nicole was doing well with her case plan. Dillon Spies, the DHHS caseworker assigned to Nicole's case in November 2021, stated that in the summer of 2022 Nicole had made progress and the case was nearing a point where reunification could have been considered. Visitation was going well, and Nicole was testing negative and working with probation. Nicole was also allowed to transport two of the children to and from visitation, and during the transportation they were unsupervised. But in October 2022, Nicole was evicted from her home and began residing in a hotel room. Visits began to occur in hotels, and there were reports of other people participating in visits. Nicole's attendance at visits began to falter, and sometimes visits would start late or would not occur at all.

*Substance Abuse Treatments Following Initial Relapse.*

Following reports that Nicole was using someone else's urine to pass her drug tests, she agreed to stricter testing. After Nicole failed to schedule a probation appointment, Shultheis decided to complete a home visit. During the home visit at the hotel, Shultheis found a partial bottle of alcohol and discovered Nicole had a device containing urine strapped to her abdomen. Shultheis had Nicole take a drug test, which was positive for amphetamines and methamphetamines. Nicole was also found to be in possession of three cell phones and large amounts of cash.

Nicole was arrested in November 2022, when she was found to be in possession of controlled substances, and later obtained an updated evaluation which recommended inpatient treatment. She obtained a bond that required her to report to a facility in Kearney upon her release, and then report to the probation office on January 17, 2023. Transportation was arranged that would take Nicole from the probation office to a treatment facility in Norfolk. Nicole failed to utilize the arranged transportation to Norfolk and also violated certain other conditions of the bond such as checking in at a certain facility in Kearney. She did report to inpatient treatment on January 17, but arrived late. The facility drug tests upon admission and Nicole's test was positive for methamphetamine. After completing the 28-day treatment, the program recommended Nicole attend a long-term treatment facility.

Nicole was admitted to a long-term treatment facility in Hastings. The program is generally 3 to 6 months, but Nicole stayed at the facility for about a week. She left the facility on her own and was trying to find another place for treatment. The facility indicated that Nicole had failed to follow some of the facility rules and that there was a question of whether the facility would have allowed her to stay if she had not left on her own. The concerns were that Nicole had failed to report back during curfew time, had checked into an NA meeting but failed to stay at the meeting, and that she had brought a male to the facility. It was alleged that Nicole had shown the male where residents lived, as well as pointed out residents that were leaving, which was a safety issue.

Nicole then went to another treatment facility in Grand Island. This facility is a halfway house, and it was not the same level of treatment and stability as the Hastings facility. There was no direct programming within the facility, and it is run by the individuals who reside in the home. Shultheis had multiple conversations with Nicole regarding the current drug treatment recommendations, which were that Nicole needed long-term residential treatment. Shultheis said the Grand Island facility was not the appropriate level of treatment for Nicole.

Due to violating her bond conditions when she had been released in Kearney, Nicole had a warrant for her arrest; she was taken into custody in March 2023. Shultheis informed Nicole that she should contact another long-term treatment facility, immediately upon release. Nicole told Shultheis that she tried to contact the facility. As of May 5, the facility reported that they had tried to contact Nicole twice but had not received any information from her.

When she was released from jail, the plan had been for Nicole to return to the Grand Island facility until she was accepted into the new facility. The Grand Island facility held a meeting, and there were some concerns which resulted in Nicole not being allowed to return to the facility. Instead, Nicole went to a transitional living facility in Kearney and stayed there for 9 days. At that time, Nicole was terminated from the program due to allegations of having relations on the

property with another resident in violation of program rules. She then went to Crossroads Sober Living, where she was residing at the time of the termination hearing. Also, at the time of the termination hearing, Riessland was in the process of conducting a third substance abuse evaluation for Nicole. His understanding was that she was seeking a third evaluation because she did not want to have to attend a long-term aftercare program.

*Foster Placements, Visitations, and Counseling.*

As previously mentioned, there had been difficulty throughout the case with the children's foster home placements, in part due to interactions between Nicole and the foster parents. One argument between Nicole and a foster parent resulted in the rule that Nicole could not come out at the end of a visit so that there would not be any contact with the foster parent. Some of the arguments Nicole had with the foster parents involved the children wanting to wear shorts, but the foster parents did not allow it because it was cold outside, as well as disagreements about the types of food the children were being served. In one instance, Nicole's brother contacted a foster family and told them the children did not like what they were being served for dinner, so he would be bringing them pizza.

DHHS also had difficulty obtaining consistent counseling for the children. Some of the interruptions in counseling were caused by foster placement changes, but one was also caused by an interaction between the counselor and Nicole. One of Sergio's counselors reported that there was not a lot of progress being made with Sergio due to his allegiance to Nicole. The counselor had also had arguments with Nicole. The counselor stopped treating Sergio after he reported that he thought Sergio or Nicole tried to record him. Spies discussed this with Nicole, who stated that she had asked Sergio to record the sessions, but that he refused to do so. Nicole reported that she thought the counselor was trying to turn Sergio against her.

Additionally, it was difficult to find a consistent visitation worker for Nicole, particularly during a period when Nicole would cancel visits, change the times of visits, or sometimes not show up for a visit. This led to one foster family giving notice that they would not be able to care for the children any longer due to their frustration with the visitation issues. Eventually DHHS switched to a different provider.

Nicole reported that her vehicle would not operate to transport her to Grand Island to visit one of the children placed there, so DHHS set up transportation services. However, the company had issues with Nicole not showing up for transport, or not confirming, and after a certain number of times the company decided it would no longer provide services for Nicole. That also affected Nicole's chances of having visits with another child who was also residing outside of Kearney. During those times, DHHS offered virtual visitation for those children.

Throughout the case, Nicole provided meals during visits for the children. At various times, she provided things like clothes and electronic devices for the children, but sometimes they were not permitted to take those items back to the foster home, or the children would report that Nicole had sold the items. Nicole was employed until her incarceration. At the time of the termination hearing, she was again employed.

As of May 2023, there had been a recent incident during a visitation that Spies found concerning. The children had been brought to Kearney for an in-person visit over a weekend. One of the foster parents was staying with the children, but the visit was supervised by a visitation

company as the visit was fully supervised. Following the Saturday visit, Nicole went to the hotel where the foster parent and children were staying, and she brought a girl who was reported to be Sergio's girlfriend. Nicole ended up spending the night at the hotel.

Spies spoke with the foster parent, who stated that Nicole asked him if she could stay, and after contacting one of the other foster parents, he allowed it. The foster parents did not ask permission, and Spies felt it was very inappropriate to have this unsupervised contact. Spies said there had never been any overnight visits approved during the entire case, and that in the last 6 months there had not been discussion of anything close to an overnight visit. Spies believed Nicole understood that all her contact with the children was to be supervised.

On May 7, 2023, Nicole had a virtual visit with Sergio, and it was recorded by the visitation company. During the conversation with Sergio, Nicole discussed the weekend hotel visit and her belief that someone must have told DHHS what happened. She also referenced bringing the girl to see Sergio and discussed that she had an argument with the girl's parents about it; Nicole stated she could not understand why the parents were upset since there were adults there to supervise. Nicole spoke negatively about the foster parents on the call.

In the same video recording from the May 7, 2023, visit, Nicole, while speaking in Spanish, said that Sergio needed to find a way to communicate with her because she needed to talk to him. DHHS had concerns that Nicole was having unauthorized or unsupervised contact with the children, especially Sergio, during the case. There were recent concerns about Nicole having this contact with Sergio, and there had been issues with him having multiple phones. Sergio's foster parent at the time of the termination hearing was trying to find the devices and make sure they were monitored. There had been several instances where Spies had spoken with Sergio, and Sergio knew things about the case that he would not have found out on his own. When Spies asked Sergio about a certain piece of information Sergio had, Sergio stated that, "I talk to people."

*DHHS' Recommendations.*

Overall, Spies felt that while Nicole had completed parts of her goals, she had not met any goal satisfactorily. While she had been through treatment, she relapsed. Nicole followed some of the recommendations in her evaluations but not all of them. She had some visits that went well, but then she had some visits where she would not follow the rules or would cancel or move the visit. Although there had been some periods of time where Nicole had done well with her case plan, since her arrest in November 2022 she had not been following her case plan or case plan goals.

At some point, DHHS attempted to have a psychological evaluation and parenting assessment completed on Nicole. Nicole completed some of the necessary testing but failed to finish the evaluation prior to her incarceration. Nicole never completed the assessment. Additionally, a review of Nicole's text messages showed she purchased vape pods for Sergio that contained "delta-8," and the messages indicated that Sergio had received the items. The only time the two would have seen each other in person would have been during visitation.

Since Nicole's release from incarceration, there had been additional concerns at visits. Nicole had some issues with scheduling, she brought Sergio's girlfriend on one visit and was told to take the girlfriend somewhere else, but Nicole did not comply. DHHS put a stipulation in place that Nicole was not allowed to talk about the case and was also not allowed to speak about her

brother's incarceration. Spies' opinion was that it was in the children's best interests to terminate Nicole's parental rights to all the children.

*Motion to Reopen Evidence.*

After the termination hearing, the State and the children's guardian ad litem filed a motion to reopen the evidence due to some newly discovered evidence, which the district court granted. At the June 12, 2023, hearing, at which Nicole did not appear, it was revealed that Nicole was terminated from her employment on May 22 for poor attendance. She failed to appear for chemical testing on May 22 and 24. On May 23, Crossroads terminated Nicole for failure to follow program rules. Nicole had a positive drug test on May 25. An updated substance abuse evaluation from May maintained the previous recommendations for a treatment center, with the possibility of staying in a halfway house depending on the treatment center's recommendations.

After Nicole's positive drug test, her bond was revoked and she was in jail from May 25, 2023, to June 2. Due to an error in the jail system, she was released rather than held until her sentencing hearing. At the time of the hearing to reopen evidence, there was a current warrant for her arrest. Shultheis had attempted to contact Nicole on June 2, and did not hear back from her until June 9. Shultheis explained to Nicole that she needed to report to the jail. Nicole stated that she felt she knew she was supposed to be in jail and told Shultheis she would turn herself in on the day of her sentencing hearing. She was aware of the updated recommendation in the evaluation and was very upset by it. Nicole had not reported to probation since her release, and her whereabouts were unknown at the time of the hearing to reopen evidence.

Visitation notes from visits Nicole had with the children in May 2023 showed that Nicole had to be redirected because she was discussing the court case with her children. That same visit, Nicole discussed getting in trouble for seeing some of the children unsupervised and stated that she did not care, that she wanted to see her kids. She received phone calls from family members and told them that they could not speak to the children because "these people are mean."

*County Court Order.*

The county court found the State had proven all the allegations made regarding Nicole in the motion to terminate her parental rights. It granted the State's motion and terminated Nicole's rights to all of the children.

## ASSIGNMENTS OF ERROR

Nicole assigns, consolidated and restated, that the county court erred in finding a statutory basis for termination, that termination was in the best interests of the children, and that she was unfit.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id.*

ANALYSIS

*Statutory Basis.*

Nicole assigns that the county court erred in finding a statutory basis existed for the termination of her parental rights. Section 43-292(7) allows for termination when the juvenile has been in out-of-home placement for 15 or more months of the most recent 22 months. This subsection operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault of the parent. *In re Interest of Mateo L. et al., supra.* In other words, if the 15 out of 22 formula is met, § 43-292(7) is met. *In re Interest of Mateo L. et al., supra.* The evidence showed that the children were removed from Nicole's care in October 2021 and had remained in out-of-home placement through the time of the termination hearing in May 2023. From the time of removal to the time the petition to terminate Nicole's parental rights was filed in March 2023, they had been in out-of-home placement for approximately 17 months. This is sufficient to meet the requirements of § 43-292(7).

Nicole also argues the county court erred by finding termination was appropriate under § 43-292(2), (4), and (6). However, since we find that § 43-292(7) has been met, we need not consider other statutory grounds. See *In re Interest of Mateo L. et al., supra* (where one statutory basis has been established, appellate court need not consider sufficiency of evidence concerning State's other statutory bases for termination).

*Best Interests and Unfitness.*

Nicole assigns the county court erred in finding that termination of her parental rights was in the children's best interests and that she was unfit. Whereas statutory grounds are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child. *In re Interest of Mateo L. et al., supra.* The Nebraska Supreme Court has stated that the Due Process Clause of the U.S. Constitution would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness. See I*n re Interest of Mateo L. et al., supra.* As such, we apply a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent. *Id.* That presumption can only be overcome by a showing that the parent is either unfit to perform the duties imposed by the relationship or has forfeited that right. *Id.*

Although the term "unfitness" is not expressly stated in § 43-292, it derives from the fault and neglect subsections of that statute and from an assessment of the child's best interests. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). In this context, parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, the performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to the child's well-being. *Id.* The best interests and parental unfitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts. *Id.*

Here, there was evidence that in the summer of 2022 Nicole had made progress and that the case was nearing a point where reunification could have been considered. But in October Nicole was evicted from her home. Visits began to occur in hotels, and there were reports of other people participating in visits. Nicole's attendance at visits began to falter, and sometimes visits

would start late or not occur at all. Following reports that Nicole was using someone else's urine to pass her drug tests, she agreed to stricter testing. Shultheis discovered that Nicole was wearing an apparatus strapped to her abdomen that contained urine. Nicole was found to be in possession of three cell phones and large amounts of cash. She was also found in possession of controlled substances.

Nicole attended two drug treatment programs during the case, But by her own admission, she did not take her first stay seriously. Ater attending the second program, Nicole was accepted into another facility, but left of her own accord days after admission. Even if Nicole had not chosen to leave on her own, it was questionable whether she could have stayed due to violating rules, including those in place for resident safety. Nicole then went to yet another facility, which Shultheis testified was not an appropriate level of care for Nicole, who needed long-term residential treatment.

After her release from incarceration in 2023, Nicole was not allowed back at the former facility, so she began to reside at another one but was terminated from the program after 9 days for an allegation of a violation of program rules. At the time of the termination hearing, she was residing at Crossroads Sober Living. But after the termination hearing concluded in May, Nicole had a positive drug test and admitted to using drugs again. Crossroads terminated Nicole from the program on May 23 for violation of program rules. Nicole sought a third substance abuse evaluation with the goal of not having to attend a long-term aftercare program. When she received the recommendation that she still required long-term residential treatment, she was very upset. While Nicole is willing to take some steps to achieve and maintain sobriety, she has not shown willingness to follow all the recommendations that are deemed necessary to do so.

Nicole argues the evidence showed that throughout the case she has voiced her commitment to maintaining her sobriety and recovery and that even though she has struggled with relapses she has never given up on her sobriety. She also argues that there was no evidence that her drug use had any effect on her children or that it was seriously detrimental to their health, morals, or well-being. But her drug use has affected her children. This is the third time they have been removed from her care. When she gave birth to Jacob, Nicole tested positive for controlled substances and all of the children tested positive for exposure to those substances. Even at the time of the termination hearing, Nicole was seeking an updated evaluation with the goal of receiving recommendations for treatment based upon what she wanted, rather than what was deemed necessary for her sobriety. She was also discussing the case at visits despite DHHS' directive not to do so and was overheard telling others that "these people are mean" for enforcing rules put in place for the children's protection.

While Nicole loves her children, she continues to struggle to recognize the impact her actions have on them and struggles to achieve and maintain sobriety. It does not appear that this will change in the near future. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). We find the evidence clear and convincing that termination of Nicole's parental rights is in the best interest of the children and that Nicole is unfit to parent her children. We affirm the order terminating her parental rights.

CONCLUSION

We affirm the order of the county court terminating Nicole's parental rights to her children.

AFFIRMED.