Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/07/2023 09:08 AM CDT

In re Interest of Denzel D., Jr.,
a child under 18 years of age.
State of Nebraska, appellee, v.
Denzel D., Sr., appellant.

___ N.W.2d ___

Filed July 7, 2023.    No. S-22-312.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below.
2. **Juvenile Courts: Evidence: Appeal and Error.** When the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another.
3. **Parental Rights: Proof.** Any of the 11 separate subsections of Neb. Rev. Stat. § 43-292 (Reissue 2016) can serve as a basis for termination of parental rights when coupled with evidence that termination is in the best interests of the child.
4. \_\_\_\_: \_\_\_\_. To terminate parental rights, the State has the burden to show by clear and convincing evidence both that one of the statutory bases enumerated in Neb. Rev. Stat. § 43-292 (Reissue 2016) exists and that termination is in the child's best interests.
5. **Parental Rights.** Whereas the statutory grounds for termination of parental rights are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child.
6. **Constitutional Law: Due Process: Parental Rights: Proof.** Showing that termination of parental rights is in the best interests of the child is necessarily a particularly high bar, since a parent's right to raise his or her children is constitutionally protected. The Due Process Clause of the U.S. Constitution would be offended if a state were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness.

7. **Constitutional Law: Parental Rights: Presumptions.** In light of the constitutionally protected nature of the parent-child relationship, there is a rebuttable presumption that it is in the child's best interests to share a relationship with his or her parents.

8. **Parental Rights: Presumptions: Proof.** The presumption that it is in the child's best interests to share a relationship with his or her parent can only be overcome by a showing that the parent either is unfit to perform the duties imposed by the relationship or has forfeited that right.

9. **Parental Rights: Words and Phrases.** Parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being.

10. **Parental Rights.** The best interests and parental unfitness analyses in the context of a termination of parental rights case require separate, fact-intensive inquiries, but each examines essentially the same underlying facts.

11. **Juvenile Courts: Minors.** Nebraska law requires the creation of permanency plans for every juvenile placed in out-of-home care and requires the juvenile courts to hold a hearing on the plan.

12. **Juvenile Courts: Judgments: Parental Rights: Adoption: Guardians and Conservators.** The juvenile court's order on a permanency plan must include whether the objective is for the juvenile to be returned to the parent, referred for a termination-of-parental-rights filing, placed for adoption, or referred for a guardianship.

Petition for further review from the Court of Appeals, Moore, Riedmann, and Bishop, Judges, on appeal thereto from the County Court for Hall County, Alfred E. Corey III, Judge. Judgment of Court of Appeals affirmed as modified.

Sonya K. Poland, of Poland Law Office, for appellant.

Christopher J. Harroun, Deputy Hall County Attorney, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

The county court for Hall County, sitting as a juvenile court, terminated the parental rights of Denzel D., Sr. (Denzel Sr.), to his son, Denzel D., Jr. (Denzel Jr.), and declined to impose a guardianship for the child. The Nebraska Court of Appeals reversed the termination of Denzel Sr.'s parental rights because it could not find that the termination was in Denzel Jr.'s best interests. The Court of Appeals further vacated the juvenile court's order regarding the guardianship. The State successfully petitioned for further review. The State argued that it carried its burden to show that termination of Denzel Sr.'s parental rights under Neb. Rev. Stat. § 43-292 (Reissue 2016) is in the best interests of Denzel Jr. and that additionally, the Court of Appeals failed to appreciate that guardianship with the child's paternal grandmother was not possible under Neb. Rev. Stat. § 43-1312.01(1) (Reissue 2016) because there was no existing placement in the grandmother's home. We conclude that the State and the guardian ad litem did not present clear and convincing evidence that terminating Denzel Sr.'s parental rights is in Denzel Jr.'s best interests. We affirm the decision of the Court of Appeals that concluded that terminating Denzel Sr.'s parental rights is not in Denzel Jr.'s best interests and reversed the juvenile court's order, but modify the decision of the Court of Appeals to the extent that its opinion can be read as suggesting that Denzel Jr. should be placed with his paternal grandmother as guardian at this time.

## STATEMENT OF FACTS

Denzel Sr. is the father of Denzel Jr., who was born in February 2018. Denzel Jr.'s mother has two other children, each of whom has a different father and neither of whom is Denzel Sr.'s child. Although proceedings in the juvenile court also involve Denzel's mother and siblings, the present appeal focuses on the termination of Denzel Sr.'s parental rights

to Denzel Jr., and Denzel's mother and siblings are referred to herein only as relevant to the proceedings involving Denzel Sr. and Denzel Jr.

In February 2020, Denzel Jr. was adjudicated pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). In September 2021, the State and the guardian ad litem filed a motion to terminate Denzel Sr.'s parental rights. As statutory grounds for termination under § 43-292, the State asserted that under subsection (2), Denzel Sr. had substantially and continuously or repeatedly neglected and refused to give Denzel Jr. necessary parental care and protection, and that under subsection (7), Denzel Jr. had been in out-of-home placement for 15 or more months of the most recent 22 months.

## 1. Termination Hearing

The following facts were shown by evidence at the termination hearing held in March 2022. In May 2018, shortly after Denzel Jr.'s birth in February 2018, Denzel Sr. was arrested and placed in jail on a charge of possession of a firearm by a prohibited person. He was later convicted and sentenced to imprisonment for 8 to 12 years in the Nebraska Department of Correctional Services. He will be eligible for parole in November 2023, and his discharge date is in January 2026. Although Denzel Sr. was aware of Denzel Jr.'s birth shortly after he was born, Denzel Sr.'s paternity of Denzel Jr. was not confirmed by a DNA test until February or March 2019.

Evidence at the termination hearing showed that during most of the time prior to the termination hearing, the correctional facility in which Denzel Sr. was housed did not allow inmates to have in-person visits because of the COVID-19 pandemic. At the time of the termination hearing, Denzel Sr. had had one in-person visit with Denzel Jr. since his arrest, but had virtual visits and phoned weekly to speak with Denzel Jr. at his foster home. Denzel Jr.'s foster mother testified that the phone calls between Denzel Sr. and Denzel Jr. went well.

The Department of Health and Human Services (DHHS) caseworker at the time of the termination hearing testified that Denzel Sr. had expressed a desire to be involved in Denzel Jr.'s life and to be able to talk with him and watch him grow up. Denzel Sr.'s case plan goals were to follow the directives of the correctional facility, to have phone calls with Denzel Jr. when allowed, to maintain communications with the caseworker, and to participate in any programming that was available to him. The caseworker testified that Denzel Sr. met all his goals, but was still incarcerated.

Denzel Sr. expressed to the caseworker that he would like for his mother, Gabrielle H. (Gabby), to be Denzel Jr.'s guardian. Although Gabby lives in Chicago, Illinois, she was actively involved with the case and had weekly virtual visits with Denzel Jr. and sometimes with Denzel Jr.'s siblings, as well as in-person visits when she traveled to Nebraska for court hearings related to the case. Gabby expressed a strong desire for Denzel Jr. to be placed with her, but because the initial primary permanency goal for Denzel Jr. was reunification with his mother, DHHS had declined to place him with Gabby at that time. Gabby informed the caseworker that if the permanency goal was changed to guardianship, she would be willing to have Denzel Jr. and his siblings placed with her.

In May 2021, DHHS recommended changing Denzel Jr.'s primary permanency goal to guardianship with Gabby. Because Gabby lived in a different state, certain procedures, including a home study, were completed, and Gabby was approved to have placement of Denzel Jr. Although at the time of the termination hearing, Denzel Jr. remained in the foster home, the caseworker testified that DHHS was still actively looking into a placement with Gabby.

## 2. Trial Court Order

Following the termination hearing, the juvenile court filed an order in which it made certain findings and terminated Denzel Sr.'s parental rights to Denzel Jr. The court

specifically found that Denzel Sr. had met the requirements of his case plan. Nevertheless, the court found clear and convincing evidence to support the asserted statutory bases for termination. In addition to finding that under § 43-292(7) Denzel Jr. had been in out-of-home placement for the most recent 25 months, the court found that under § 43-292(2), Denzel Sr. had neglected Denzel Jr. because his own actions had caused him to be incarcerated and therefore unable to meet Denzel Jr.'s basic needs.

The court also found that termination of Denzel Sr.'s parental rights was in Denzel Jr.'s best interests. In this regard, the court noted that because of his incarceration, Denzel Sr. had not been able to parent Denzel Jr., and that although Denzel Sr. would be eligible for parole in late 2023, he could remain in prison until 2026. The court further reasoned that guardianship is intended to be only a temporary placement to allow a parent to address issues and that Denzel Jr. should not be required to languish in the court system indefinitely. For that reason, in addition to terminating Denzel Sr.'s parental rights, the court denied the request for a guardianship for Denzel Jr.

### 3. Court of Appeals Opinion

Denzel Sr. appealed to the Court of Appeals. He claimed that the juvenile court erred when it (1) terminated his parental rights and (2) denied his request for a guardianship.

First addressing the statutory basis for termination of Denzel Sr.'s parental rights, the Court of Appeals determined that the evidence showed that under § 43-292(7), Denzel Jr. had been in out-of-home placement for 15 or more months of the most recent 22 months. However, it found that the State and the guardian ad litem had not proved by clear and convincing evidence that termination of Denzel Sr.'s parental rights was in Denzel Jr.'s best interests.

Recognizing that incarceration alone cannot be the sole basis for termination of parental rights, the Court of Appeals stated that "[a]lmost the entirety of the State's evidence

related to best interests and unfitness focused on Denzel Sr.'s incarceration." *In re Interest of Denzel D.*, 31 Neb. App. 547, 554, 985 N.W.2d 45, 51 (2023). It noted that the best interests inquiry focuses on the future well-being of the child, as well as the rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent. Upon review of all the evidence, the Court of Appeals stated that it could not find that termination of Denzel Sr.'s parental rights was in Denzel Jr.'s best interests, and it reversed the juvenile court's order terminating Denzel Sr.'s parental rights.

The Court of Appeals then considered the juvenile court's denial of Denzel Sr.'s request for a guardianship for Denzel Jr. The Court of Appeals first rejected the State's argument that the issue of a guardianship was not properly presented to the juvenile court because no motion was filed under Neb. Rev. Stat. § 43-1312.01 (Reissue 2016). The Court of Appeals reasoned that the statute authorized the juvenile court to make a guardianship placement but did not require that a specific motion for guardianship be made in order for the juvenile court to consider placing an adjudicated child in a guardianship. Instead, the Court of Appeals reasoned, DHHS determines the permanency plan for children in its custody and presents the plan to the juvenile court for approval; if the plan recommends a guardianship and DHHS has identified a potential guardian, then the issue has been presented to the juvenile court. The Court of Appeals noted that in this case, DHHS had recommended changing the permanency plan for Denzel Jr. to a guardianship in May 2021 and the court had approved the change. DHHS took steps to facilitate a guardianship and had approved Gabby for placement of Denzel Jr. The Court of Appeals determined, therefore, that the permanency plan of a guardianship with Gabby had been presented to the juvenile court throughout the case.

The Court of Appeals further determined that the juvenile court erred when it denied the guardianship. The Court of Appeals noted that the juvenile court characterized

a guardianship as a temporary placement that allowed a parent to address issues and that the juvenile court therefore declined to impose a guardianship because it determined that Denzel Jr.'s best interests required permanency. The Court of Appels stated, however, that terminating a parent's rights is not a prerequisite to achieving permanency for an adjudicated child and that § 43-1312.01(3) specifically provides that a "guardianship placement shall be considered permanent for the child." The Court of Appeals noted evidence in this case that Gabby had been approved for the guardianship and that she had participated since the inception of this case, including weekly virtual visits with Denzel Jr. The Court of Appeals further noted that the children's therapist opined that Denzel Jr. and his siblings should remain together and that Gabby was willing to take all three into her home. The Court of Appeals also noted DHHS' support for the establishment of a guardianship and the caseworker's testimony that it was in Denzel Jr.'s best interests to be placed in a guardianship with Gabby. The Court of Appeals concluded:

> The record indicates that DHHS supports placing Denzel Jr. in a guardianship with Gabby, she was willing and able to take in Denzel Jr. and his siblings in order to keep them together, and she could provide the permanency that Denzel Jr. needs while he could remain in a relative placement with his paternal grandmother.

*In re Interest of Denzel D.*, 31 Neb. App. 547, 560, 985 N.W.2d 45, 55 (2023).

Based on this, the Court of Appeals determined that "the juvenile court erred in denying the request for guardianship." *Id*. It therefore vacated the juvenile court's order and remanded the cause "for further proceedings consistent with this opinion." *Id*.

We granted the State's petition for further review.

## ASSIGNMENTS OF ERROR

On further review, the State claims, inter alia, that the Court of Appeals erred when it (1) reversed the order of the

juvenile court that had terminated the parental rights of Denzel Sr. and (2) vacated the order of the juvenile court that had denied Denzel Sr.'s request for a guardianship.

## STANDARDS OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id*.

## ANALYSIS

### 1. Termination of Parental Rights

The State claims on further review that the Court of Appeals erred when it reversed the order of the juvenile court that had terminated the parental rights of Denzel Sr. Upon our de novo review, we conclude that the record shows that the parental rights of Denzel Sr. should not have been terminated and therefore affirm the decision of the Court of Appeals in this regard.

### (a) Statutory Basis For Termination

[3,4] The grounds for terminating parental rights are codified in § 43-292. Any of the 11 separate subsections of § 43-292 can serve as a basis for termination when coupled with evidence that termination is in the best interests of the child. *In re Interest of Mateo L. et al., supra*. The State has the burden to show by clear and convincing evidence both that one of the statutory bases enumerated in § 43-292 exists and that termination is in the child's best interests. *Id*.

There is no dispute that § 43-292(7) provided such a basis for termination in this case. Section 43-292(7) allows for termination when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most

recent twenty-two months." As the juvenile court found and the record shows, Denzel Jr. was removed from his mother's care and placed in foster care in February 2020, where he remained placed for the duration of the proceedings in the juvenile court. At the time of the termination hearing in March 2022, Denzel Jr. had been in out-of-home placement continuously for 25 months. Based on our de novo review, the State and the guardian ad litem met their burden to show by clear and convincing evidence that grounds for termination under § 43-292(7) were satisfied.

Section 43-292 requires that the State prove only one of the enumerated statutory grounds for termination of parental rights. *In re Interest of Mateo L. et al., supra*. Thus, we need not address whether the evidence was sufficient to support termination under § 43-292(2) and proceed to the forward-looking question of whether termination was also in the best interests of Denzel Jr.

(b) Best Interests of Denzel Jr.

[5,6] The State also challenges the Court of Appeals' conclusion that it would not be in the best interests of Denzel Jr. to terminate Denzel Sr.'s parental rights. As stated above, under § 43-292, it is the State's burden by clear and convincing evidence to show that there not only exists a statutory basis for termination but that termination is in the best interests of the child. *In re Interest of Mateo L. et al., supra*. Whereas the statutory grounds for termination of parental rights are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child. *Id*. This second hurdle is a high bar for the State, since a parent's right to raise his or her children is constitutionally protected. *Id*. In this regard, we have emphasized that the Due Process Clause of the U.S. Constitution would be offended "[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness." *Id*. at 582, 961 N.W.2d at 529 (internal

quotation marks omitted) (quoting *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978)).

The opinion of the Court of Appeals recites the following facts, which support Denzel Sr.'s parental fitness:

> While incarcerated, Denzel Sr. completed three parenting courses, a class dealing with the victim impact of his offense, and classes through a community college to further his education. He also completed an intensive outpatient program that dealt with issues such as improving his chances of not reoffending, emotional intelligence, integrating back into society, and creating a better future for himself. At the time of the termination hearing, Denzel Sr. was housed at a work ethic camp and working toward a work-release program for which he could be eligible the following month. He explained that he was on the waiting list for a forklifting certification class and that if he was able to be transferred to the work-release center in Lincoln, Nebraska, there was a forklifting position available. He testified that he has followed all of the rules at the correctional facility and maintained employment while incarcerated, including cooking, cleaning, and assisting in the library.
>
> Furthermore, Denzel Sr. kept in consistent contact with Denzel Jr. throughout the case. According to the caseworker, Denzel Sr. showed a desire to maintain a relationship with his son while being incarcerated and an interest in playing a role in his son's life and in keeping up to date with his development. He made weekly phone calls to speak with his son during the time the correctional facility would not allow in-person visits and maintained consistent contact with the caseworkers. During the only in-person visit he had with Denzel Jr., which occurred in November 2021, the foster mother reported that Denzel Sr. interacted very well with his son, provided for his needs, and read him a book.

*In re Interest of Denzel D.*, 31 Neb. App. 547, 555, 985 N.W.2d 45, 52 (2023).

[7-10] In light of the constitutionally protected nature of the parent-child relationship, in this case, the State and the guardian ad litem must overcome the rebuttable presumption that it is in Denzel Jr.'s best interests to share a relationship with his parents. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). That presumption can only be overcome by a showing that the parent either is unfit to perform the duties imposed by the relationship or has forfeited that right. *Id*. In this context, parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests and parental unfitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts. *Id*.

We agree with the analysis of the Court of Appeals that stated, "Almost the entirety of the State's evidence related to best interests and unfitness focused on Denzel Sr.'s incarceration." *In re Interest of Denzel D.*, 31 Neb. App. at 554, 985 N.W.2d at 51. While Denzel Sr.'s incarceration presently limits his ability to provide for Denzel Jr., he is not unfit to parent. Since Denzel Sr.'s paternity was confirmed, he has remained in Denzel Jr.'s life as feasible and has not reoffended. Compare *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015) (stating parent chose to use and sell marijuana while sole custodial parent of other children and was charged with assaulting another inmate during incarceration).

Since learning of his paternity, Denzel Sr. has been willing and interested in performing parental duties. He has completed three parenting classes, stayed in contact with caseworkers, and consistently stayed in communication with Denzel Jr. via weekly phone calls, as well as video visits and one in-person visit. Prior to his incarceration, while in

a relationship with Denzel Jr.'s mother, Denzel Sr. had performed parental duties for Denzel Jr.'s older sister, including dressing her and singing to her. The foster mother testified that Denzel Sr. was attentive and good to Denzel Jr.'s sister and opined that he has parenting skills and knowledge of how to take care of a young child.

Denzel Sr. has maintained employment within the correctional facility, and he is working toward participating in a work-release program. He also completed a program aimed at improving his chances of not reoffending, building his emotional intelligence, integrating back into society, and creating a better future for himself. He also testified that he is seeking a forklift certification.

In this regard, the juvenile court specifically found that Denzel Sr. met the requirements of his court reports and case plans. Under these plans, his goal was to safely parent and protect his son, and his strategies were to follow the requirements at the state penitentiary, have calls with his son and the caseworker, and participate in any programming at the facility.

The juvenile court raised a sincere and serious concern that Denzel Jr. would languish in the foster care system and be denied permanency unless Denzel Sr.'s parental rights were terminated. We have explained that the best interests of the child would not be served where the child would languish in the system because an incarcerated parent continued to offend or had not demonstrated the ability to parent, or where it was unclear when or whether the parent would be able to perform parenting duties in the future. See, e.g., *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002).

[11,12] But, as the Court of Appeals observed, under the Nebraska Juvenile Code recited below, an adjudicated child can achieve permanency without terminating a parent's rights if the juvenile court grants a guardianship. Nebraska law requires the creation of permanency plans for every juvenile

placed in out-of-home care and requires the juvenile courts to hold a hearing on the plan. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016). The court's order on a permanency plan must include whether the objective is for the juvenile to be returned to the parent, referred for a termination-of-parental-rights filing, placed for adoption, or referred for a guardianship. *Id*. If the permanency plan for a child who has been adjudicated under § 43-247(3)(a) does not recommend return of the child to his or her parent or that the child be placed for adoption, the juvenile court may place the child in a guardianship as long as certain statutory requirements have been met. See § 43-1312.01.

Section 43-1312.01(3) specifically provides that notwithstanding the fact that the juvenile court retains jurisdiction over the child for modification or termination of the guardianship order, "the guardianship placement shall be considered permanent for the child." When a guardianship is created, § 43-1312.01(3) provides that "[t]he court shall discontinue permanency reviews and case reviews and shall relieve [DHHS] of the responsibility of supervising the placement of the child." Consistent with the goal of permanency, Denzel Sr. requested a guardianship with Gabby, which we discuss below. Thus, termination of Denzel Sr.'s parental rights is not necessary to achieve permanency for Denzel Jr.

In view of the foregoing, we determine that the State and the guardian ad litem failed to prove that Denzel Sr. is unfit or that termination of Denzel Sr.'s parental rights was in Denzel Jr.'s best interests, and we reject the State's assignment of error made on further review and affirm the decision of the Court of Appeals that reversed the order of the juvenile court terminating Denzel Sr.'s parental rights. See *In re Interest of Lizabella R.*, 25 Neb. App. 421, 907 N.W.2d 745 (2018).

### (c) Guardianship

The State generally reads the Court of Appeals decision as prematurely weighing in favorably on the merits of

Denzel Sr.'s request for a guardianship. The State contends that the Court of Appeals directed the juvenile court to place Denzel Jr. with Gabby as guardian. Although we do not completely agree with the State's reading of the opinion of the Court of Appeals, we modify the opinion to the extent it can be read as suggesting that Denzel Jr. should be placed with Gabby as his guardian at this time.

In its opinion, the Court of Appeals stated:

> The record indicates that DHHS supports placing Denzel Jr. in a guardianship with Gabby, she was willing and able to take in Denzel Jr. and his siblings in order to keep then together, and she could provide the permanency that Denzel Jr. needs while he could remain in a relative placement with his paternal grandmother. Based on the foregoing, we conclude that the juvenile court erred in denying the request for guardianship.

*In re Interest of Denzel D.*, 31 Neb. App. 547, 560, 985 N.W.2d 45, 55 (2023).

We do not read the opinion of the Court of Appeals as prematurely evaluating the guardianship question, and more importantly, under the relevant statutes, a guardianship was not presently available at the time of the termination hearing.

The juvenile court can place a child in a guardianship according to statutes. The statutes relevant to our analysis are recited below.

Section 43-1312.01(1)(a) through (d) provide, inter alia:

> (1) If the permanency plan for a child established pursuant to section 43-1312 does not recommend return of the child to his or her parent or that the child be placed for adoption, the juvenile court may place the child in a guardianship in a relative home as defined in section 71-1901, in a kinship home as defined in section 71-1901, or with an individual as provided in section 43-285 if:
>
> (a) The child is a juvenile who has been adjudged to be under subdivision (3)(a) of section 43-247;

(b) The child has been in the placement for at least six months;

(c) The child consents to the guardianship, if the child is ten years of age or older; and

(d) The guardian:

(i) Is suitable . . . .

A "[r]elative home," as defined by Neb. Rev. Stat. § 71-1901(9) (Reissue 2018), is

a home where a child or children receive foster care and at least one of the primary caretakers is related to the child or children, or to a sibling of such child or children pursuant to section 43-1311.02, in his or her care by blood, marriage, or adoption or, in the case of an Indian child, at least one of the primary caretakers is an extended family member as defined in section 43-1503[.]

A "[k]inship home," as defined by 71-1901(7), is

a home where a child or children receive foster care and at least one of the primary caretakers has previously lived with or is a trusted adult that has a preexisting, significant relationship with the child or children or a sibling of such child or children pursuant to section 43-1311.02.

Neb. Rev. Stat. § 43-285(1) (Cum. Supp. 2022) identifies an "individual" eligible to be a guardian as follows:

When the court awards a juvenile to the care of [DHHS], an association, or an individual in accordance with the Nebraska Juvenile Code, the juvenile shall, unless otherwise ordered, become a ward and be subject to the legal custody and care of the department, association, or individual to whose care he or she is committed.

Because Gabby has not provided foster care, under § 43-1312.01 she is not eligible for a guardianship as having been a "[r]elative home" or "[k]inship home." Although she is an "individual" under § 43-285, Denzel Jr. has not been in placement with her for at least 6 months as required by § 43-1312.01(1)(b). On this record, Gabby was not eligible for a guardianship. See *In re Interest of LeVanta S.*, 295 Neb.

151, 887 N.W.2d 502 (2016) (stating that requirements of § 43-1312.01(1) are conjunctive and all must be met). To the extent the opinion of the Court of Appeals suggested that the juvenile court should place Denzel Jr. with Gabby as guardian, we disapprove of the suggestion at this time and modify the opinion of the Court of Appeals accordingly.

## CONCLUSION

For the reasons recited above, we affirm the decision of the Court of Appeals that concluded that terminating Denzel Sr.'s parental rights is not in Denzel Jr.'s best interests and reversed the juvenile court's order, but modify the decision of the Court of Appeals to the extent that its opinion can be read as suggesting that Denzel Jr. should be placed with Gabby as guardian at this time.

Affirmed as modified.

Funke, J., dissenting.

Because I would determine that clear and convincing evidence supported the juvenile court's order terminating Denzel Sr.'s parental rights to Denzel Jr., I respectfully dissent from the majority opinion in this matter.

The State and guardian ad litem have the burden of proving by clear and convincing evidence that one of the grounds enumerated in Neb. Rev. Stat § 43-292 (Reissue 2016) exists and that termination is in Denzel Jr.'s best interests.[1] Because there is no dispute that Denzel Jr. has been in out-of-home placement for 15 or more months of the last 22 months, which is an independent ground for termination of parental rights under § 43-292(7), the only remaining issue is whether termination of Denzel Sr.'s parental rights is in Denzel Jr.'s best interests.

There is a rebuttable presumption that it is in the child's best interests to share a relationship with his or her parent, which can only be overcome by a showing that the parent

---

[1] Cf. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021).

either is unfit to perform the duties imposed by the relationship or has forfeited that right.[2] The majority opinion properly notes that parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing that has caused, or probably will result in, detriment to a child's well-being.[3] The best interests and parental unfitness analyses in the context of termination of parental rights cases require separate, fact-intensive inquiries, but each examines essentially the same underlying facts.[4]

The Court of Appeals and majority have both expressed concern that "[a]lmost the entirety of the State's evidence related to best interests and unfitness focused on Denzel Sr.'s incarceration." It is true that incarceration cannot be the "sole factual basis" for termination of parental rights.[5] However, when termination is grounded in a child's out-of-home placement, as is true in this case, incarceration is not the sole factual basis for termination.[6] Incarceration does not insulate an inmate from the termination of his or her parental rights if the record contains the clear and convincing evidence that would support the termination of the rights of any other parent.[7]

On the contrary, the law implores us to consider the effects Denzel Sr.'s incarceration and resulting inability to perform his parental obligations will have on Denzel Jr. We have held that while incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered.[8]

---

[2] *Id.*

[3] *Id*.

[4] *Id*.

[5] See Neb. Rev. Stat. § 43-292.02(2) (Cum. Supp. 2022).

[6] *In re Interest of Mateo L. et al., supra* note 1.

[7] *In re Interest of Gabriella H.*, 289 Neb. 323, 855 N.W.2d 368 (2014).

[8] *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). See § 43-292.02(2)(b).

In a case involving termination of parental rights, it is proper to consider a parent's inability to perform his or her parental obligations due to imprisonment.[9] Although incarceration itself may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary.[10] Thus, on multiple occasions, this court has determined that circumstances including a parent's confinement have warranted termination of parental rights.[11]

For example, in *In re Interest of DeWayne G. & Devon G.*,[12] we concluded that termination of an incarcerated father's rights was in the best interests of his two sons when he had never cared for them prior to his incarceration and when one son had been in foster care for more than 4 years and the other for more than 2 years. We reached this conclusion despite the father's testimony that he was scheduled for parole approximately 3 months after the termination hearing.[13]

Again, in *In re Interest of Gabriella H.*,[14] we concluded that the evidence clearly and convincingly established that termination of a father's parental rights was in the child's best interests. There, the child had never lived with her father and had continuously lived in a foster home since she was approximately 3 days old. The child, who was 20 months old at the time of the termination hearing, last saw her father when she was less than 3 months old. The father had not been involved in the child's life since that time. The caseworker testified that the father was in a detention facility "'for an undetermined amount of time,'" that the child deserved

---

[9] *In re Interest of Jahon S., supra* note 8.

[10] *Id.*

[11] See, e.g., *id.*; *In re Interest of Gabriella H., supra* note 7; *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002).

[12] *In re Interest of DeWayne G. & Devon G., supra* note 11.

[13] *Id.*

[14] *In re Interest of Gabriella H., supra* note 7.

permanency sooner rather than later, and that the child "'need[ed] to get out of the foster care system.'"[15]

And yet again, in *In re Interest of Jahon*, S.,[16] we affirmed the termination of parental rights of a father who was eligible for parole within a month following the termination hearing. In doing so, we stated that the father's past criminal actions demonstrated voluntary conduct that prevented him from functioning as a fit parent.[17] We further noted that the father was incarcerated at the time of the child's birth, did not intend to cooperate with the Department of Health and Human Services, and "'would make it very difficult'" for that department to reunify him with his children.[18]

Here, the record indicates that Denzel Sr. was convicted of a charge of possession of a firearm by a prohibited person. He was sentenced to a term of imprisonment for 8 to 12 years in the Nebraska Department of Correctional Services. He will be eligible for parole in November 2023, and his official discharge date is in January 2026.

Denzel Sr.'s past criminal actions demonstrate voluntary conduct that has prevented him from functioning as a fit parent. He illegally possessed a firearm after the birth of Denzel Jr., when he knew that he was potentially the father of the child and that by doing so, he faced possible incarceration. The only evidence as to his future ability to parent is that while incarcerated, Denzel Sr. has completed parenting classes and an intensive outpatient program, furthered his education, and worked toward a work-release program. Additionally, Denzel Sr. has kept in consistent contact with Denzel Jr. through weekly phone calls and has shown a desire to maintain a relationship with his son.

---

[15] *Id*. at 334-35, 855 N.W.2d at 377.

[16] *In re Interest of Jahon S., supra* note 8.

[17] *Id*.

[18] *Id*. at 106, 864 N.W.2d at 235.

However, the record also indicates that Denzel Jr. has previously exhibited behavioral issues such as tantrums, noncompliance, and separation anxiety, which are all common behavioral problems associated with trauma. Denzel Jr.'s behavioral issues have improved as a result of therapy and being part of a foster care setting that has provided structure, routine, consistency, and predictability. Denzel Jr.'s therapist opined that weekly telephone communications between the child and Denzel Sr. were a "routine of communication," but were not a "parenting routine," and that an incarcerated individual would be unable to provide a "parenting routine" because they are not with their child.

A caseworker for the Department of Health and Human Services testified that one in-person visit occurred between Denzel Sr. and Denzel Jr. in November 2021. However, based on Denzel Jr.'s behavior after that visit, no further in-person visits were scheduled. Additionally, the facility in which Denzel Sr. was incarcerated offered a "daddy day" visitation 1 day per month, and it was the responsibility of the inmate to put his name on the list. However, each time the caseworker checked with the facility, Denzel Sr.'s name was not on the list. Thus, no "daddy day" visits occurred.

Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity.[19] As a result of decisions made by Denzel Sr., which adversely reflect upon his parental fitness, Denzel Jr. has been in foster care since the age of 2, and there is no basis on this record to conclude that permanency could be achieved in the foreseeable future if Denzel Sr.'s parental rights remain intact. Denzel Jr. has never lived with Denzel Sr. Denzel Jr. has languished in foster care for years as a result of Denzel Sr.'s actions. At the time of the termination proceedings, Denzel Jr. had been in foster care for approximately 2 years 2 months. By the time

---

[19] *In re Interest of Jahon S., supra* note 8.

Denzel Sr. will have reached mandatory release from prison, Denzel Jr. will have been in foster care for 5 years 11 months. Additionally, there is no basis to conclude that Denzel Sr. will be prepared to be a parent to Denzel Jr. immediately upon his release from incarceration. It is not uncommon for parents who have been apart from their children for an extended period to have supervised visitation and/or stepped-up visitation to ensure the parent/child relationship is reestablished or, as would be the case here, established. As such, Denzel Jr. will most likely remain in foster care or guardianship well into the future.

The juvenile court observed the witnesses and determined that the evidence clearly and convincingly established that termination of Denzel Sr.'s parental rights was in Denzel Jr.'s best interests. Denzel Jr. should not be required to languish in the court system indefinitely because Denzel Sr. is unable to perform his parental obligations. Therefore, I would conclude that the juvenile court did not err in finding that termination of Denzel Sr.'s parental rights was in Denzel Jr.'s best interests.

HEAVICAN, C.J., and CASSEL, J., join in this dissent.