IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF GREYSON M.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF GREYSON M., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CASSIDY M., APPELLANT, AND KYLE P., APPELLEE.

Filed September 9, 2025.    No. A-24-801.

Appeal from the County Court for Seward County: C. JO PETERSEN, Judge. Affirmed.

Steffanie J. Garner Kotik, of Kotik & McClure Law, for appellant.

Ashley Dorwart, Seward Deputy County Attorney, for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Cassidy M. appeals from the order of the county court for Seward County, sitting as a juvenile court, that terminated her parental rights to her son, Greyson M. Following our de novo review, we affirm.

## II. BACKGROUND

Greyson, born in 2013, was removed from Cassidy's care on March 21, 2022, after Cassidy overdosed in a home when Greyson was present. Greyson has remained in out-of-home placement since that time. In April 2024, the State filed a motion to terminate Cassidy's parental rights under Neb. Rev. Stat. § 43-292(2), (4), (6), and (7) (Reissue 2016). A termination hearing was held in July 2024. We summarize the evidence presented at the termination hearing as is necessary to resolve this appeal.

- 1 -

## 1. EFFORTS TOWARD REUNIFICATION

To achieve reunification, the Nebraska Department of Health and Human Services (DHHS) set goals for Cassidy to provide a safe and stable living environment and provide proper care and supervision for Greyson. To do this, Cassidy was required to maintain sobriety, complete treatment, follow any aftercare recommendations, and engage with her caseworker. She was also to comply with her probation requirements. Cassidy struggled to meet these goals, and they remained largely the same throughout the case.

### (a) Substance Use Treatment

Between March 2022 and July 2024, Cassidy attempted substance use treatment with six different programs. Cassidy was discharged from one treatment program for testing positive for substances. She was discharged from another treatment program for failure to implement healthy boundaries, which led to a restriction from talking to males while seeking treatment at that facility. Cassidy was discharged from a different treatment program after reports that she was unwilling to change and that she stated she was not following the rules of the facility. In February 2024, Cassidy was voted out of a treatment program after allegations were made that she had exchanged emails with a man containing negative comments about her peers. There were also reports that Cassidy had been using a substance during her time at that facility, but that the substance would not show on tests. Cassidy denied this allegation. Cassidy successfully completed a treatment program on July 1, and at the time of the termination hearing had been living in an apartment for approximately 3 weeks. Cassidy stated that she had been sober since June 2023.

### (b) Other Services

During Cassidy's initial assessment, DHHS offered her assistance in arranging therapy and family support services. She declined these services. Cassidy was on probation and was receiving services, such as education, through probation. At the time of the termination hearing, Cassidy was receiving services through a community support provider affiliated with the substance use treatment program she had completed. The community support worker did not believe there were services Cassidy needed that she was not already receiving.

Drug testing was provided by probation. Cassidy's probation officer reported that Cassidy admitted to using methamphetamine in January 2023. In March, Cassidy admitted she had been drinking alcohol and smoking marijuana. There were also suspicions that she had been tampering with her samples.

DHHS provided visitation for Cassidy and Greyson, and visits never progressed beyond agency supervised visitation. Cassidy and Greyson had video visitation from July 2023 to the end of September, because Cassidy was incarcerated. Visits went well, with no safety concerns noted.

### (c) Greyson

Greyson was in therapy with Holly Fuhr throughout this case. Fuhr worked with Greyson on processing and trauma. In February or March 2024, Fuhr recommended that DHHS move forward with adoption for Greyson. She based this on Greyson's trauma from the length of the case. Fuhr felt it was increasingly likely that Greyson could lash out in different ways and that adoption might be a way to stabilize his life and allow him to move forward.

The case was transferred to DHHS caseworker Jordan Sutton on February 26, 2024, and he remained the caseworker at the time of the termination hearing. Sutton felt that Cassidy was focused on her sobriety but did not appear as worried about what would happen if Greyson returned home. Sutton was concerned that Greyson could have behaviors that Cassidy was not able to handle. He believed it was in Greyson's best interests not to linger in foster care, and that reunification would take at least a year, assuming there were no struggles during the reunification process. Sutton stated that children who linger in foster care can have trauma from their time in foster care. According to Sutton, lingering adds a sense of the unknown to children's lives and can cause anxiety and depression. Fuhr told Sutton that "waiting around" for reunification would be harmful for Greyson's mental status.

## 2. COURT ORDER

The county court found that the State had proven termination was appropriate under § 42- 292(2), (4), (6), and (7). It found Cassidy was unfit, and that it was in Greyson's best interests to terminate her parental rights. Cassidy appeals.

## III. ASSIGNMENT OF ERROR

Cassidy assigns that the county court erred in finding that terminating her parental rights was in Greyson's best interests.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id*.

## V. ANALYSIS

Cassidy assigns that the county court erred in finding that terminating her parental rights was in Greyson's bests interests. To terminate parental rights, it is the State's burden to show by clear and convincing evidence both that one of the statutory bases enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Cameron L. & David L.,* 32 Neb. App. 578, 3 N.W.3d 376 (2024).

### 1. STATUTORY BASIS

Although Cassidy assigns error only to the county court's decision that terminating her parental rights was in Greyson's best interests, in our de novo review we will also address whether the State met the statutory basis for termination. Section 43-292(2) provides for termination of parental rights when "parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection."

Past neglect, along with facts relating to current family circumstances—which go to best interests—are all properly considered in a parental rights termination case under § 43-292(2). *In re Interest of Gabriel B.,* 31 Neb. App. 21, 976 N.W.2d 206 (2022). One need not have physical possession of a child to demonstrate the existence of neglect contemplated by § 43-292(2). *In re*

*Interest of Gabriel B., supra.* A parent neglects a child by failing to put himself or herself in a position where the child can be placed in the parent's care, in the same manner as a parent who improperly cares for a child in his or her care. *Id.* Cassidy, through her inability to achieve and maintain sobriety until just before the termination hearing, failed to put herself in a position to have Greyson placed in her care.

Cassidy has struggled with substance use since she was 16 years old. Throughout her life, she has been to nearly a dozen different treatment providers to address her substance use. Cassidy has attempted treatment at six different programs since March 2022. This case began when Cassidy overdosed while Greyson was in the home. Cassidy admitted to substance use in early 2023, and in 2024 there was an allegation, which Cassidy denied, that while in treatment, she had used a substance that would not be reflected in the facility's tests. She had to leave her treatment in June 2023 to serve time in jail. Cassidy was discharged from some facilities for drug testing positive, failing to set healthy boundaries, stating she was not following rules, and for exchanging emails that were critical of her peers.

Cassidy successfully completed a treatment program on July 1, 2024, 3 weeks before the termination hearing began. We commend Cassidy for the steps she has taken to achieve and maintain sobriety, but by the time of the termination hearing, Greyson had been in out-of-home placement for over 2 years. It would be at least another year before Greyson could be returned to Cassidy's care, and only if there were no difficulties during the reunification process.

Although Cassidy has made some progress, it is not sufficient to allow Greyson to return to her care. Sustained, long-term change and progress has not been shown and given Cassidy's past relapses, long-term change is uncertain. Cassidy has failed to place herself in a position where Greyson can be placed in her care. The State's evidence shows that over the course of this case, Cassidy has substantially and continuously or repeatedly neglected and refused to give Greyson parental care and protection. The statutory basis for termination under § 43-292(2) has been met.

## 2. BEST INTERESTS

In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Cameron L. & David L., supra.* See also § 43-292. A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *In re Interest of Cameron L. & David L., supra.* There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. *Id.* This presumption is overcome only when the State has proved that the parent is unfit. *Id.* Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.*

The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.* In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *Id.*

As discussed above, Cassidy struggled to complete treatment and maintain sobriety. She has been to nearly a dozen treatment providers over her lifetime to address her substance use, including six different providers during this case. She was discharged from some treatment facilities due to her own behavior in testing positive for substances, failing to implement healthy boundaries, stating she was not following rules, and being critical of her peers. Cassidy stated her sobriety date was June 2023, but there were allegations, which she denied, that in early 2024 she had been using a substance that would not be reflected in the facility's tests. Cassidy did complete a treatment program on July 1, 2024, but this was merely 3 weeks before the termination hearing.

Visits between Cassidy and Greyson went well, and no safety concerns were noted, but visits remained supervised throughout the entire case. When the petition to terminate Cassidy's parental rights was filed, Greyson had been in out-of-home placement for approximately 24 months. At the time of the termination hearing, Greyson had been in out-of-home placement for approximately 28 months. Sutton believed it would be at least a year before reunification could occur, and that it was not in Greyson's best interests to linger in foster care. Fuhr informed Sutton that waiting for reunification would be harmful for Greyson's mental status. In February or March 2024, Fuhr recommended moving forward with adoption for Greyson based on Greyson's trauma from the length of the case.

Cassidy argues that she did not receive support from DHHS and any progress she made was done on her own. We acknowledge that DHHS was not as proactive as it could have been in providing some services. However, Cassidy declined certain services at the initial intake. She was also receiving services through probation and through her treatment programs. DHHS did not need to duplicate services Cassidy was already receiving.

We commend Cassidy for the steps she has taken to achieve sobriety. But she has not shown the sustained, long-term progress necessary for Greyson to be returned to her care. Greyson has been in out-of-home placement since March 2022, and waiting longer for an uncertain reunification would be damaging to his mental state. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 3 N.W.3d 376 (2024). Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. See *id*. Greyson needs, and deserves, permanency. Although Cassidy loves Greyson, her struggles with her sobriety, and the length of time it required her to obtain it during this case, require that her parental rights be terminated for Greyson to achieve that permanency. The evidence presented showed that Cassidy was unfit, and that the termination of her parental rights was in Greyson's best interests.

## VI. CONCLUSION

The county court correctly determined that there was a statutory basis for termination and that termination of Cassidy's parental rights was in Greyson's bests interests. We affirm the order of the county court.

AFFIRMED.