IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

IN RE INTEREST OF M.L. & L.L.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF M.L. AND L.L., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

SARA V., APPELLANT, AND ANTHONY L., APPELLEE.

Filed November 25, 2025.    No. A-25-183.

Appeal from the Separate Juvenile Court of Douglas County: MATTHEW R. KAHLER, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Emma J. Lindemeier for appellant.

Cara Stirts, Deputy Douglas County Attorney, for appellee State of Nebraska.

PIRTLE, WELCH, and FREEMAN, Judges.

FREEMAN, Judge.

INTRODUCTION

Sara V. appeals from the order of the separate juvenile court of Douglas County terminating her parental rights to her two children, M.L. and L.L. Sara alleges that the court erred in terminating her parental rights because the minor children were not within the meaning of Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016). Further, Sara argues that the court erred in finding that termination of parental rights was in the best interest of the children. For the reasons set forth below, we affirm.

BACKGROUND

Sara and Anthony L. are the biological parents of M.L., born February 2022, and L.L., born July 2018. In February 2022, when Sara gave birth to M.L., both she and M.L. tested positive for

amphetamines. As a result, M.L. developed vocal cord dysfunction and required a G-tube. The State initially filed a petition claiming that M.L. lacked proper parental care due to Sara's drug use and risk of harm under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). However, the State immediately amended the petition to include L.L. upon a finding that Sara left L.L. with an inappropriate caregiver. Both M.L. and L.L. were subsequently removed and placed in the custody of the Department of Health and Human Services (DHHS) on February 23, 2022.

In support of this removal, the State provided an affidavit in which Jamie Andersen, a children and family specialist, detailed the preceding events as well as the following additional information in relevant part:

(5) The mother has three other children that she does not care for as they all three reside with their grandmother. . . DHHS is currently working with the grandmother to gain guardianship of those children as they have lived with her the majority of their lives and rarely see their mother.

(6) The mother had another child that was severely physically abused in 2007 by babysitters that the mother left the child with. The mother lost her parental rights in 2008 in Douglas County Juvenile Court.

(7) The mother has had multiple different CPS intakes dating back from 2007. In 2017 CPS was involved as the mother left her children and went to Las Vegas. In 2018 Anthony [], the above named minor child's father, was using meth. . . .

(8) The mother is currently on Probation for theft and was also arrested in August 2021 for burglary. The mother has failed to follow through with Probation for the last month and has missed all drug screens since January 18. 2022. The Probation Officer is considering Sara [] absconding from Probation if she doesn't appear to a mandatory meeting today.

(9) Anthony [] is not caring for any of his children. He has at least five children. . . .

(10) Anthony [] has a significant criminal history consisting of possession of meth, terroristic threats, domestic violence, assaults, robbery, weapons charges.

Following removal, the court ordered Sara to complete a co-occurring evaluation and random drug testing; successfully complete residential treatment; abstain from alcohol and controlled substances; maintain income and adequate housing; stay in contact with case professionals; and participate in therapy and visitation with her two children, M.L. and L.L., as directed. Anthony was ordered to abide by the same conditions, except he was not required to complete residential treatment. Initially, Sara maintained frequent communication with her DHHS case manager concerning family team meetings, visitation, and transportation. However, over time, Sara became increasingly difficult to reach, frequently changing phone numbers and addresses without updating her DHHS case manager. DHHS recorded six different phone numbers for Sara, many obtained through third parties. DHHS attempted to explain to Sara that it was her responsibility to supply DHHS with her contact information; however, this information remained inconsistent.

In addition to failing to provide adequate contact information, Sara also left threatening or derogatory voicemails for caseworkers, attorneys, and the judge. Case manager, LeAnne Kniewel, reported that Sara accused her of tampering with evidence in Sara's prior criminal case and even

threatened Kniewel's family. Kniewel recalled that the last call of that nature occurred in December 2024.

Sara participated in two treatment programs. She entered Lydia House in November 2022 but was discharged for rule violations. She then attended Family Works from March to October 2023, where another daughter, J., not the subject of this case, briefly lived with her. During her seven month treatment, Sara participated in mandatory drug testing approximately three times a week. All recorded drug tests were negative. However, Sara was later discharged for reaching "maximum potential." The Family Works therapist reasoned that Sara "had difficulties accepting the responsibilities of her actions putting this case in motion." Conflicts between J. and other residents ultimately led to the child's placement with her grandmother.

In October 2023, Sara moved into the Oxford House, a sober living community requiring drug testing but not formal treatment. Sara tested negative three times but left in the third month after being asked to test again, following reports of erratic and belligerent behavior. Sara told DHHS she was moving in with her mother, though her mother reported Sara was staying with friends. Thereafter, Sara failed to consistently comply with random urinalyses testing set up by DHHS.

While in treatment, Sara's visitation with M.L. and L.L. was generally consistent. Outside of treatment, visits often failed due to transportation problems, missed connections, or communication lapses when Sara changed her phone number. On one occasion, Sara provided the location of a park, but failed to arrive because she could not find it. On other occasions, Sara's job or health interfered with the scheduled visits. DHHS attempted to address such barriers by arranging multiple transportation agencies and adjusting locations, but issues persisted with scheduling, agency reliability, and communication between DHHS, the agency, and Sara herself.

Beneficial Behavioral Health Services (BBHS) supervised visits twice a week and reported that "[t]here would be times that [Sara] would get very upset or paranoid about things, and if she escalated, [M.L. and L.L.] appeared to be scared or concerned." Visits were suspended three times for concerns about Sara's sobriety or inappropriate comments to the children. Sara was formally discharged from BBHS in September 2024 for lack of participation and failure to confirm visits.

Outside of treatment, Sara failed to maintain employment or secure stable housing. She briefly worked at Cubby's and held temporary jobs but did not sustain consistent income. She missed therapy appointments arranged by DHHS and was discharged from Child Parent Psychotherapy for non-participation. Sara's DHHS case manager reported concerns that Sara's continued instability and lack of participation in mandated drug testing jeopardized her ability to safely parent her children, noting that "[Sara] struggles to understand that it affects her children if she can't be sober, [and] if she doesn't have a place to live."

Anthony, the children's biological father, maintained almost no contact with DHHS. The agency was unable to confirm whether he had safe housing, and he never attended visits or reached out to the children. DHHS was not able to confirm whether Anthony complied with any of the court orders.

In March 2024, M.L. and L.L. were placed with foster parents. Visits with Sara were scheduled weekly but typically occurred only every two to three weeks. The foster parents took M.L. to medical appointments for his G-tube but did not invite Sara to attend, though they did provide her updates through a notebook. Sara's visits stopped altogether in August 2024. DHHS

continued to attempt to contact Sara, but barely received a response. When DHHS was able to reach Sara, she questioned why visits were not occurring yet continued to avoid further engagement with the agency. DHHS was unable to get into contact with Sara following a referral in January 2025.

On November 4, 2024, the State filed its third motion to terminate Sara's parental rights. Trial was held in February 2025. Neither Sara nor Anthony appeared. The court found that Sara had not made sustained progress toward reunification despite two years of services, had not visited the children since August 2024, and failed to resolve the same safety risk that led to removal, including her failure to successfully complete residential chemical dependency treatment and failure to show progress via drug screens and hair follicle tests. The court concluded that it was in the children's best interests to terminate parental rights.

## ASSIGNMENTS OF ERROR

Sara assigns, summarized and restated, that the juvenile court erred in finding (1) that the State proved by clear and convincing evidence that the minor children were within the statutory meaning of § 43-292 and (2) that it was in the best interests of the children to terminate her parental rights to M.L. and L.L.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id*.

## ANALYSIS

*Statutory Grounds.*

The juvenile court found that the State had presented clear and convincing evidence to satisfy § 42-292(2), (6), and (7) regarding M.L. and L.L. Sara challenges the juvenile court's finding that the statutory grounds have been met.

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. See *In re Interest of Gabriel B.*, 31 Neb. App. 21, 976 N.W.2d 206 (2022). The State must prove these elements by clear and convincing evidence. *Id*.

In her brief on appeal, Sara asserts that the juvenile court erred in finding that termination of her parental rights was warranted pursuant to § 43-292(2), (6), or (7). Contrary to Sara's assertions, upon our de novo review of the record, we find that the State presented clear and convincing evidence to prove that termination of Sara's parental rights to her two children was warranted pursuant to § 43-292(7).

Section 43-292(7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d

873 (2019). In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. *In re Interest of Becka P. et al., supra*.

Here, M.L. and L.L. have been in out-of-home placement for 15 or more months of the most recent 22 months. The children were removed from Sara's care on February 23, 2022, and have remained out of the home since their removal. The State filed their third motion for termination of parental rights on November 4, 2024. The existence of the statutory basis alleged in § 43-292(7) should be determined as of the date the petition or motion to terminate is filed. See *In re Interest of Jessalina M.*, 315 Neb. 535, 997 N.W.2d 778 (2023). At the time of filing, the children had been in out-of-home placement for over 32 months. Thus, the statutory requirement for termination under § 43-292(7) has been met.

Having determined that statutory grounds existed for termination of Sara's parental rights under § 43-292(7), we need not further address the sufficiency of the evidence to support termination under any other statutory ground. See *In re Interest of Becka P. et al., supra* (if appellate court determines that lower court correctly found termination of parental rights is appropriate under one statutory ground set forth in § 43-292, appellate court need not further address sufficiency of evidence to support termination under any other statutory ground).

*Best Interests and Parental Unfitness.*

In addition to providing a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Gabriel B., supra*. In light of the constitutionally protected nature of the parent-child relationship, there is a rebuttable presumption that it is in the child's best interests to share a relationship with his or her parents. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023). The presumption that it is in the child's best interests to share a relationship with his or her parent can only be overcome by a showing that the parent either is unfit to perform the duties imposed by the relationship or has forfeited that right. *Id*. Parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being. *Id*.

The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). While both are separate inquiries, each examines essentially the same underlying facts. *Id*. In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. See *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

Sara argues that the State failed to prove termination was in her children's best interest, pointing to her efforts and desire to schedule visitations. Sara asserts that she was not provided with proper resources to address the transportation barriers that limited her ability to attend visits. While the record contains limited evidence of her attempts to visit, the overwhelming evidence shows that Sara's failures to maintain consistent visitation were largely within her control. DHHS repeatedly provided accommodations, including adjusting locations and arranging transportation, yet Sara failed to communicate with transportation providers, confirm visits with BBHS, or reliably engage with DHHS. While DHHS occasionally experienced issues with transportation

logistics, these minor difficulties do not excuse Sara's repeated failures to otherwise engage with her children. The five-month gap between her last visit with the children and the termination hearing indicates that she made no meaningful effort to resume contact. This evidence demonstrates that the primary obstacle to visitation was Sara's own inaction, not a lack of available resources.

Furthermore, the case plan required Sara to remain drug free, but she consistently failed to submit urine analyses or drug tests, including at the Oxford House. Sara entered multiple treatment programs but was discharged for failing to meet requirements or follow the rules, thus failing to fulfill the court's order that she successfully complete residential treatment. She missed parenting sessions, was discharged from child-parent psychotherapy for lack of participation and failed to secure consistent employment or housing. Although she attended therapy while in Family Works, she did not attend DHHS arranged sessions. As a result of Sara's failure to make any progress on these goals, she was no closer to achieving reunification with her children than she was at the start of the proceedings in February 2022.

Further, the best interests of the child require termination of parental rights when a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time. See *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). Permanency is in a child's best interest because children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. See *In re Interest of Jahon S., supra*. The children have been in foster care since March 2024 and in the State's care since February 2022. The children need stability and should not linger in foster care while Sara is unable to rehabilitate herself.

The State asserts in its brief that the transcript does not include the record of a termination hearing on February 7, 2025. Sara, however, asserts that the hearing occurred on February 2. The juvenile court assigns that those proceedings occurred on February 7, with an order terminating Sara's parental rights entered on February 10. There is no record of proceedings on February 2, nor would there be as this would have been a Sunday. We make no further findings on this matter.

Accordingly, we find there was clear and convincing evidence to show that Sara was unfit and that terminating her parental rights was in the children's best interests.

CONCLUSION

Upon our de novo review of the record, we conclude the State proved by clear and convincing evidence that grounds for termination of Sara's parental rights to M.L. and L.L. existed under § 43-292(7). The State also proved that the termination of Sara's parental rights is in the children's best interests. Accordingly, the juvenile court's orders are affirmed.

AFFIRMED.