IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF SARAH M. & RYAN R.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF SARAH M. AND RYAN R., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

SHANNON R., APPELLANT.

Filed September 17, 2024.    Nos. A-24-043, A-24-044.

Appeals from the County Court for Scotts Bluff County: KRIS D. MICKEY, Judge. Affirmed.

Allison M. Witcofski, of Douglas, Kelly, Ostdiek, Snyder, Ossian and Vogl, P.C., for appellant.

No appearance for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Shannon R. appeals from the orders of the Scotts Bluff County Court, sitting in its capacity as a juvenile court, terminating her parental rights. She asserts that the court erred in finding that statutory grounds existed to support termination of her parental rights and that termination was in the minor children's best interests. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

### BACKGROUND

Shannon is the biological mother of Sarah M., who was born in April 2013, and Ryan R., who was born in June 2014. The children have different fathers: Sarah's father is John V., Jr., and Ryan's father is Caleb R. Both fathers relinquished their parental rights prior to trial and are only referenced as needed to provide context.

Between May 2020 and July 2021, which was prior to the current case, the Nebraska Department of Health and Human Services (DHHS) was involved with the family on a voluntary basis as a result of previous intakes received by DHHS. The family's history with DHHS included intakes regarding concerns of domestic violence, safety in the home, stability, alleged sexual abuse, and inappropriate medication management. In July 2021, DHHS closed a voluntary case involving the family due to a lack of progress or engagement and no filing by the State for adjudication of the children. The following month, the State's child abuse hotline received an intake reporting that Sarah was taken to the doctor after suffering from an apparent seizure. At that time, Shannon reported that she had intentionally given Sarah unprescribed Adderall and Risperidone to treat Sarah's undiagnosed attention deficit/hyperactivity disorder (ADHD).

### PETITION FOR ADJUDICATION AND MOTION FOR TEMPORARY CUSTODY

Following the August intake, on September 13, 2021, the State filed separate petitions in the Lancaster County Juvenile Court against Shannon alleging that Sarah and Ryan came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2022). The petitions, later amended, alleged that the "juveniles lack proper parental care by reason of the fault or habits of their mother" because on one or more occasion, including in August 2021, Shannon admitted she gave Sarah unprescribed prescription medications Risperidone and/or Adderall which had been prescribed for Ryan and which placed the children at risk of harm.

On October 25, 2021, while the petitions to adjudicate were pending, the guardian ad litem (GAL) made an oral motion requesting the court to award temporary legal and physical custody of the children to DHHS. A hearing was held on the motion wherein the GAL alleged that Shannon was allowing her biological mother, Donna McPherson, a convicted and registered sex offender, to reside in the home with the children; that domestic violence occurred between Shannon and Caleb in front of the children; that there were allegations that Shannon's roommate, Wesley Bain, had sexually assaulted Sarah; that Shannon gave Sarah unprescribed prescription medications which may have caused Sarah to suffer a seizure; that Shannon allowed contact between her children and her adopted parents whose rights to other adopted children had been terminated; that Shannon refused to allow the GAL to enter the home where the children resided; that Shannon refused to allow the children to participate in forensic interviews; and that Shannon exhibited aggressive behaviors towards case professionals. Following the hearing, despite noting that it had "grave" concerns, the court overruled the GAL's request to award temporary physical custody of the children to DHHS but awarded legal custody to DHHS pending the adjudication hearing. Pursuant to its legal custody award, the court ordered Shannon to: (1) allow the juveniles to complete interviews at the Child Advocacy Center as arranged by DHHS; (2) allow the juveniles to complete trauma assessments, as arranged by DHHS; (3) not leave the State of Nebraska with

the juveniles without prior approval of the court; (4) not leave the juveniles alone with named individuals including McPherson or anyone else who was not approved by DHHS in advance; (5) fully cooperate with random drop-ins at the home as arranged by DHHS; and (6) not allow Bain to have contact with either child.

At the adjudication hearing on December 13, 2021, based upon Shannon's admissions, the court adjudicated the children under § 43-247(3)(a). The court ordered that all previous orders remained in full force and effect and further ordered DHHS to offer a psychological and psychiatric evaluation of Shannon.

Following a depositional hearing held on February 1, 2022, the court ordered legal custody of the children to remain with DHHS with physical placement with Shannon and that the permanency objective was family preservation. Additionally, the court ordered Shannon to: (1) follow the therapist's recommendations relating to the minor children's trauma assessments; (2) participate in family support services to ensure all needs were being met and were consistent for the family; (3) participate in a new psychological evaluation with collateral information to be provided by DHHS; (4) not send the minor children out of state or leave Nebraska with the juveniles without prior court approval and a travel letter from DHHS; (5) not leave the minor children alone with named individuals including Bain and MacPherson or anyone else not approved by DHHS; (6) fully cooperate with random drop-ins of the home, as arranged by DHHS; (7) not allow anyone to live in the home without first obtaining DHHS approval; (8) not provide medication to the minor children except as prescribed by a qualified medical professional; (9) cooperate with a family support worker; and (10) complete parenting classes. Additionally, the court order provided that if either minor child is left in the care of any person not approved in advance by DHHS, both children shall immediately be removed from Shannon's home.

REMOVAL

On February 24, 2022, the State filed a motion for approval of emergency placement. In support of the motion, the State submitted an affidavit from the child and family services specialist who alleged that during a random drop in, the worker observed that McPherson had been living in the home. The worker asked McPherson to leave and reminded Shannon that the court's order did not allow anyone to live in the home without prior approval and that McPherson was not to be left alone with the minor children due to safety concerns. When confronted, Shannon became verbally aggressive, as did Caleb, when he was informed that McPherson was asked to leave. The court granted the motion for emergency placement, placing the children with John, Sarah's father, who resided in Mitchell, Nebraska.

A review hearing was held in March 2022, wherein the court continued Ryan and Sarah's out-of-home placement with John and ordered Shannon to participate in supervised virtual visitation with the children, subject to Shannon not allowing unapproved individuals to be present during the visits, and not otherwise having unapproved contact with the children.

On July 15, 2022, the State filed a motion for approval of emergency placement of the children from John's home due to safety concerns relating to John's intoxication during scheduled

home visits and John's statements that he was no longer going to allow DHHS workers into the home. The court approved the motion to remove the children from John's home the same day.

In November 2022, the State filed a motion to change the children's placement to the home of their paternal grandfather who resided in Scottsbluff, Nebraska. After granting the placement change, on November 30, the Lancaster County Separate Juvenile Court transferred the case to the County Court of Scotts Bluff County.

Following a review hearing, the Scotts Bluff County Court, sitting in its capacity as a juvenile court, ordered that all previous orders not in conflict with its order shall remain in full force and effect. The court also ordered Shannon to participate in drug testing.

MOTION TO TERMINATE PARENTAL RIGHTS

On September 15, 2023, the State filed a motion in the Scotts Bluff County Court sitting in its capacity as a juvenile court to terminate Shannon's parental rights alleging that: Shannon substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection; Shannon was unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct was seriously detrimental to the health, morals, or well-being of minor children; reasonable efforts to preserve and reunify the family if required under Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2022), under the direction of the court, had failed to correct the conditions leading to the adjudication; the minor children had been in an out-of-home placement for 15 or more months of the most recent 22 months; and termination of Shannon's parental rights was in Sarah and Ryan's best interests.

TRIAL

The termination trial was held in December 2023. Testimony was adduced from Karissa Harvey, Dixie Hampton, and Star Trevino, DHHS child and family services workers; and Heather Silva-Venturino, the children's foster parent.

Harvey testified that she was initially assigned as the courtesy worker to conduct face-to-face meetings with the children when they were placed with John while the case was still under the jurisdiction of the Lancaster County Separate Juvenile Court. After the case was transferred to the Scotts Bluff County Court, Harvey was assigned as the ongoing CFS. She testified that the State initially received an intake after concerns were reported to the child abuse hotline that Shannon had given ADHD medications prescribed to Ryan to Sarah because she believed Sarah had ADHD. Sarah subsequently suffered a seizure, but it was unclear whether the unprescribed medications caused the seizure. Harvey testified that a prevention plan was put into place to keep the children in the home, but while the prevention plan was in place, additional concerns arose regarding the children's safety, including: the condition of the home due to an infestation; the presence of several people living in the home which posed safety risks to the children; concerns regarding substance use by individuals residing in the home; concerns that Shannon was allowing an adult male to sleep in the same bed as Sarah; concerns of domestic violence between Shannon and Caleb; and concerns that Shannon was leaving the children in the care of inappropriate people including McPherson, who was a registered sex offender. Harvey

- 4 -

testified that after Shannon failed to implement and follow the prevention plan, the children were removed.

Harvey testified that during the pendency of the case, Shannon's case plan goals included providing a safe and stable home free from domestic violence; identifying an appropriate support system for the family; and addressing concerns related to Shannon's mental health. Harvey testified that overall, Shannon made poor progress meeting her case plan goals or following court orders, generally due to a lack of follow through. Specifically, Harvey testified that Shannon failed to follow through with receiving mental health treatment; that Shannon never had control over who was in her home and failed to maintain boundaries for keeping unsafe individuals out of the home; that from May to September 2023, Shannon continuously tested positive for amphetamines and methamphetamine; that Shannon failed to complete the Circle of Security class; that Shannon failed to follow the recommendations contained in her psychological evaluation; that during the last 6 months Shannon attended only 3 of 27 visits; that Shannon declined to utilize available transportation services; that Shannon failed to maintain a job or legal source of income; that Shannon was evicted from her home and never secured her own housing thereafter; that Shannon continued to pursue relationships with individuals with criminal records, including domestic violence and substance use; and that her visits with the children remained supervised throughout the case.

Harvey indicated that Shannon never denied using methamphetamine during the pendency of the case and that during conversations, Shannon indicated that she used methamphetamine on a daily basis to treat her mental health concerns. Harvey testified that Shannon did not appreciate or acknowledge how her drug abuse impacted her ability to care for her children, stating that "I don't believe that she . . . understood that. I really feel like she believed that she could still parent her children under the influence of methamphetamine because of her view that it was a medication that was helping her with her ADHD." Although Shannon had obtained a prescription for treating her ADHD symptoms, Harvey testified that Shannon told her that she was no longer taking that medication.

Trevino and Hampton testified that they supervised Shannon's visitation with the minor children. Trevino testified that she supervised one visit between Shannon and the children on June 17, 2023, and did not conduct any further visits due to safety concerns after Shannon became verbally aggressive and threatened to physically harm Trevino. Following the visit, Shannon sent text messages to another worker referencing their presence as "having people that can get to me or something like that." Trevino stated that she felt unsafe after that incident. Hampton testified that she supervised Shannon's visits with the children for a little over a year. Shannon was approved for 12 hours a week of fully supervised visitation which was split up between Saturday and Sunday. Hampton testified that Shannon was inconsistent in attending visitation; that Shannon was 4 hours late to a visit; that Shannon had fallen asleep during visits; that she had appeared to be coming down from a high; and that she had canceled a visit due to having been pulled over with methamphetamine in her car. The visitation reports, which were received into evidence, referenced Shannon's lack of consistency in attending visitation and the worker's conversations with Shannon about the effects that her lack of consistency was having on her children. Despite these conversations, Shannon's consistency did not improve, nor did Shannon's visits progress beyond

supervised visitation. The visitation worker also noted concerns of Shannon's continued substance use.

Silva-Venturino testified that she is Sarah's step-grandmother and that she and her husband have been the children's foster parents since November 2022. She testified that both children had been doing well in their home. Silva-Venturino testified that both children were participating in counseling to help address their trauma, and although they love Shannon, they have expressed their anger towards her for the situation.

Silva-Venturino testified that the children exhibited behaviors both before and after visits with Shannon. Prior to visits with Shannon, the children "went from being really relaxed and easygoing to more uptight, a shorter fuse. They'd get frustrated very easily. And the closer we would get, Sarah's controlling would really start escalating." She testified that, after visits with Shannon, Ryan "seemed very indifferent" and "for a couple of nights, he regressed on toilet training and would wet the bed." After visits with Shannon, "Sarah had a very strong need [for] control." She further testified that initially the children were disappointed when Shannon canceled visits but eventually that disappointment turned into "sighs of relief." Since the children had been engaging in counseling, Silva-Venturino testified that Ryan has had fewer "autistic meltdowns" and Sarah has been able to communicate her feelings better and has been less controlling in the home.

Following the trial, the Scotts Bluff County Court found that "clear and convincing evidence supports termination of parental rights under each statutory ground alleged." The court further stated:

> The evidence convincingly demonstrates that [Shannon] has essentially refused to participate in the caseplan adopted by the court, and has continued to regularly use methamphetamine and other illegal substances to the detriment of herself and these children. The testimony essentially shows that [Shannon] has made extraordinarily poor progress toward the goal of reunification by failing or refusing to engage in the bulk of services offered to her through [DHHS]. She has never progressed beyond fully-supervised visitation. Of the last 27 visitations offered, [Shannon] has only participated in three. During the course of visitations, she has displayed odd, escalated, and threatening behavior toward the family support workers. She has demonstrated an unwillingness to interact in a positive manner with most anyone assigned to try and help her, instead choosing to curse or be verbally aggressive. The testimony of the family support workers and foster parent demonstrate profound negative behaviors by the children leading up to and immediately after her visitations. She continues living in circumstances accurately characterized as chaotic by a lack of safe and stable housing, floating between her current boyfriend's residence and her mother's residence. The evidence demonstrates her support network is characterized by relationships with one boyfriend after another, apparently each with a background of either domestic violence, substance abuse, or both, with her only other support being her mother — a registered sex offender. She is not employed and currently has no financial resources to care for her children. Although [Shannon] apparently intends to pursue a Social Security disability case, no evidence of an application was offered nor any medical evidence that would indicate imminent financial stability. She has failed to follow through on the recommendations of a psychological evaluation, and failed to

complete Circle of Security parenting classes. She has not participated in counseling to address mental health concerns, and has not completed a parenting evaluation. She has refused to address her methamphetamine addiction, instead believing that she is appropriately self-medicating since she views methamphetamine as appropriate daily medicine. She was convicted of attempted possession of a controlled substance and served a period of incarceration in Lincoln County, Nebraska. She has an ongoing felony drug case in York County, Nebraska. . . . There is no dispute that Ryan has been in out-of-home care for approximately 22 months as of the time of the adjudication hearing. It is noteworthy that [Shannon] chose to participate by videoconference at the contested adjudication. For such a consequential hearing, this court could not help but notice the indifference displayed by [Shannon] throughout much of the proceeding by appearing to fall asleep during the evidentiary portion of the adjudication.

[Shannon] has not progressed anywhere close to the point of sustained, fully unsupervised visitation, and the prospects of her regaining custody of these children in the foreseeable future remains highly uncertain. Efforts to rehabilitate [Shannon] over an extended period of time have been fruitless, and she has shown a persistent inability to abide by the law, maintain her freedom, and become an appropriate parent. The evidence convincingly shows these children have suffered substantial and repeated neglect by [Shannon], and [Shannon] has made virtually no progress on her case plan throughout the pendency of the cases despite all of the resources afforded to her through DHHS. With rare exceptions, she has consistently tested positive for illegal drugs, and refused to accept help with her addiction. Although the evidence indicates [that Shannon] has expressed good intentions and ideas on how to improve her circumstances, the absence of sustained behavioral change shows a failure or general incapacity to deliberately prioritize her children above all else, and is therefore presently unfit. There is no basis in the record to conclude that permanency could be achieved in the foreseeable future if [Shannon's] parental rights remain intact.

Finding that statutory grounds existed to support termination, and that termination was in Sarah and Ryan's best interests, the court entered its order terminating Shannon's parental rights. Shannon now appeals from the court's order.

ASSIGNMENTS OF ERROR

Shannon assigns, renumbered and restated, that the court erred in: (1) finding clear and convincing evidence that statutory grounds for termination existed under Neb. Rev. Stat. § 43-292 (2), (4), (6) and (7) (Reissue 2016); and (2) finding that it was in the children's best interests to terminate her parental rights.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023). However, when the evidence is in conflict, an appellate court

may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id.*

## ANALYSIS

### STATUTORY BASIS FOR TERMINATION

Shannon first assigns that the court erred in finding that the State proved by clear and convincing evidence that statutory grounds enumerated in § 43-292 (2), (4), (6), and (7) existed.

To terminate parental rights, it is the State's burden to show by clear and convincing evidence both that one of the statutory bases enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 3 N.W.3d 376 (2024).

One such ground is when the parent has substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). A parent's failure to provide an environment to which his or her children can return can establish substantial, continual, and repeated neglect. *Id.* Past neglect, along with facts relating to current family circumstances which go to best interests, are all properly considered in a parental rights termination case under § 43-292(2). *Id.*

Here, the evidence shows that the children were removed from Shannon's care on February 24, 2022, after she failed to follow the prevention plan and the court order prohibiting unapproved individuals from residing in the home with the children. Following the children's removal, although Shannon separated from Caleb, she continued to pursue relationships with individuals having criminal records involving domestic violence and substance use. Shannon further continued to allow individuals to reside with her that posed safety risks to the children, including McPherson, who had been convicted for her involvement in sex trafficking her own children and had been placed on the sex offender registry. While the case was pending, Shannon continuously used methamphetamine and minimized the effect it had on her ability to parent, believing that it was beneficial for treating her mental health conditions. Despite undergoing a psychological evaluation, Shannon failed to comply with recommendations and failed to take medication prescribed to treat her ADHD, opting instead to use methamphetamine. In the 6 months preceding the trial, Shannon had attended only 3 out of 27 offered visits with her children. On one specific occasion, while on the way to the visit, she was pulled over and law enforcement seized methamphetamine from inside the vehicle. That visit, along with many others, was subsequently canceled. During the visits that Shannon did attend, the visitation worker noted concerns including verbal aggression, sleeping during visits, appearing to be high or coming down from a high, and inattentiveness to her children. The visits never progressed beyond supervised visitation. Additionally, the foster parent reported that the children exhibited behaviors before and after visits with Shannon and that the children expressed signs of relief when Shannon canceled visits. Shannon, having never obtained a legal source of income or safe and stable housing, failed to put herself in a position to care for the children. The record shows that Shannon had been offered ample opportunity to rehabilitate herself but failed to avail herself of the services offered.

In reviewing this record, Shannon's repeated failure to provide a safe, stable, and drug-free environment for her children, her failure to attend visitation with her children, and her inability to

recognize the effects that her actions had on her children, demonstrate Shannon's lack of motivation to reunify. Based on our review of this record, we find that the State established by clear and convincing evidencing that termination of her parental rights was sufficient under § 43-292(2). Therefore, we need not consider whether termination was appropriate under any other statutory ground. See *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019) (if appellate court determines that lower court correctly found that termination of parental rights is appropriate under one of statutory grounds set forth in § 43-292, appellate court need not further address sufficiency of evidence to support termination under any other statutory ground).

## BEST INTERESTS

Shannon next assigns that the court erred in finding that termination of her parental rights was in the minor children's best interests. She argues that she presented "more than enough evidence to show that she has the tools and capabilities to be the parent her children need and deserve." Brief for appellant at 19. She argues that termination is reserved for occasions when there is no other reasonable alternative and is the last resort. For that reason, she contends that the State failed in its burden of proof.

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). This presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id.* The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id.*

Here, at the time of trial, the children had been removed from Shannon's care for approximately 22 months, and during that time Shannon failed to put herself in a position to care for the children. As stated above, Shannon continued to involve herself with individuals who posed safety risks to her children, she continued to use methamphetamine, she failed to address her mental health concerns and follow the recommendations outlined in her psychological evaluation, and she failed to maintain safe and stable housing and a legal source of income. Shannon refused to engage in offered services to help her satisfy her obligations under court orders and to meet her goals under the case plans. Shannon also became verbally aggressive and threatened physical harm against DHHS workers attempting to help her reunify. Shannon continued to struggle to recognize the impact her actions had on her children. Furthermore, the record shows that Shannon was unlikely to put herself in a position to care for her children in the foreseeable future. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). We find the evidence was clear and convincing that termination of Shannon's parental rights was in the best interest of the children and that Shannon is unfit to parent her children. Accordingly, the court did not err in finding that termination was in the best interests of the minor children.

## CONCLUSION

For the reasons stated above, we affirm the court's order terminating Shannon's parental rights.

AFFIRMED.